831 So.2d 204 (2002)
CALLAWAY LAND & CATTLE CO., INC., a Florida corporation, and Callaway Land & Cattle Co. Limited Partnership, a Florida limited partnership, Appellants,
v.
BANYON LAKES C. CORP., a Florida corporation; John Nierlich; Richard Puzzitiello, Sr.; William C. Wingfield, individually; Reserve Homes, Ltd., L.P., a Delaware limited partnership, by and through its general partner, Kolter Property Development, L.L.C., a Delaware limited liability company; and POD 31 Homes, Inc., a Delaware corporation, Appellees.
No. 4D01-2032.
District Court of Appeal of Florida, Fourth District.
October 2, 2002.
Concurring Opinion on Denial of Rehearing December 4, 2002.
*205 Alan S. Polackwich, Sr. of Clem, Polackwich, Vocelle & Berg, L.L.P., Vero Beach, for appellants.
Ivan J. Reich and Joann Nesta Burnett of Becker & Poliakoff, P.A., Fort Lauderdale, for Appellees Banyon Lakes C. Corp., John Nierlich, and Richard Puzzitiello, Sr.
STONE, J.
Callaway Land & Cattle Co., Inc. (Callaway) appeals the dismissal of its counterclaim where the trial court found the disparagement of title claim to be permissive and, thus, barred by the statute of limitations. The trial court also dismissed claims for tortious interference with a contractual relationship and abuse of process because they were based on the same facts and circumstances as the disparagement of title claim. We affirm.
*206 Banyon Lakes C. Corp. (Banyon) sued Callaway in March 1997, for damages and specific performance based upon Callaway's anticipatory breach of an option to purchase land and for fraud in the inducement. According to the fourth amended complaint, Banyon's predecessor in interest, Bridlewood, purchased property within a Callaway planned unit development in April 1996. In connection with the purchase, Bridlewood and Callaway entered into an option agreement granting Bridlewood the right to purchase certain other parcels. In September 1996, however, Callaway notified Bridlewood that it was cancelling the options.
Banyon filed this suit against Callaway for breach of contract along with a lis pendens containing a legal description of the option parcels. In March 1997, Banyon filed an amended lis pendens with its fourth amended complaint.
In March 2001, Callaway filed an amended counterclaim containing counts against Banyon, and two of its principals, for (i) disparagement of title, (ii) tortious interference with a contractual relationship between Callaway and a third party, Kolter Entities, and (iii) abuse of process. Callaway alleged that in 1997, it was engaged in negotiations with Kolter for the sale of a portion of the previously optioned property. An agreement with Kolter was reached in September 1997. Callaway alleged that both before and after the execution of the Kolter agreement, Banyon engaged in conduct designed to prevent Callaway from selling the property to Kolter.
In its counterclaim, Callaway alleged that Banyan made false statements and threats to Kolter, claiming that it held a valid and enforceable option and other rights to a portion of the property. In March 1997, Banyon recorded a copy of the option agreement that, according to Callaway, had been terminated. The counterclaim asserts that Banyon's conduct interfered with Callaway's purchase and sale agreement with Kolter and that such actions amounted to disparagement of title, interference with a contractual relationship, and abuse of process.
Banyon moved to dismiss the amended counterclaim as to all counts, asserting that they were permissive and not compulsory counterclaims. As such, they were subject to the applicable statute of limitations, which Banyon asserts is two years as to all Callaway claims under section 95.11(4)(g), Florida Statutes. Banyon argued that the last of the alleged defamatory statements occurred in April 1998 and, thus, the time for bringing an action expired in April 2000. Banyon also argued that the contract interference claim and the abuse of action claim were time barred because they arose from the same facts and circumstances that constitute the basis for the disparagement (slander) of title count. The trial court dismissed all counts of the counterclaim.
First, the trial court correctly determined that Callaway's counterclaim was permissive. Thus, the disparagement of title claim was barred by the two year limitations period governing actions for libel and slander.
Second, the trial court correctly decided that the counts for interference with contract and abuse of process were also barred by virtue of applying the "single publication/single action" rule, a principle applicable in defamation claims.
Initially, as to the dismissal of the disparagement of title claim, the trial court correctly recognized that Banyon's alleged conduct does not constitute grounds for a compulsory counterclaim. As to this conduct, no tolling of the statute of limitations is permissible as would be allowed in the *207 case of compulsory counterclaim. See Stein v. Feingold, 629 So.2d 998, 999 (Fla. 3d DCA 1993)
Florida Rule of Civil Procedure 1.170(a) requires a party to state as a counterclaim any claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim...." A counterclaim not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim is deemed permissive. Fla. R. Civ. P. 1.170(b). The supreme court has adopted the "logical relationship" test in determining whether a counterclaim is compulsory or permissive. Londono v. Turkey Creek, Inc., 609 So.2d 14, 20 (Fla.1992). The test is as follows:
[A] claim has a logical relationship to the original claim if it arises out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant.
Id.
Applying the first prong of the Londono standard, the operative facts which serve as the basis for Banyon's breach of contract claim do not serve as the basis for Callaway's counterclaims. While Banyon's complaint focuses on the breach of the agreement, Callaway's counterclaim focuses on Banyon's actions after the alleged breach. The counterclaim is based on allegations that Banyon maliciously and unlawfully undertook actions to cloud the title to Callaway's property in order to prevent its disposition by Callaway to Kolter. Specifically, the counterclaim alleges that Banyon spread false information about the property to Kolter, illegally attempted to record the option agreement, and filed numerous motions for lis pendens for the purpose of further clouding the title to the property.
Applying the second prong of the Londono standard, the aggregate core of facts upon which the breach of contract action is based do not "activate" additional legal rights in Callaway that would have otherwise remained dormant. See Aguilar v. Southeast Bank, 728 So.2d 744 (Fla.1999)(holding that breach of one agreement did not relate or support the breach of a separate and distinct agreement).
In light of the fact that a permissive counterclaim is subject to the applicable statute of limitations, the trial court correctly held that the action for disparagement of title was barred by the two year statute of limitations under section 95.11(4)(g), Florida Statutes (1999). The two year limitations period applicable to actions for libel or slander has been held to be equally applicable to actions for slander/disparagement of title. See Old Plantation Corp. v. Maule Indust., Inc., 68 So.2d 180 (Fla.1953)[1]; Sailboat Key, Inc. v. Gardner, 378 So.2d 47 (Fla. 3d DCA 1979). Here, the limitations period expired in April 2000, where Callaway's counterclaim is based on conduct that last occurred in April 1998. The permissive counterclaim was not filed until January 2001.
Because the disparagement of title claim was time barred, the claims for *208 tortious interference and abuse of process must also fail where they are subject to the single publication/single action rule. In Florida, a single publication gives rise to a single cause of action. Orlando Sports Stadium, Inc. v. Sentinel Star Co., 316 So.2d 607, 609 (Fla. 4th DCA 1975). The various injuries resulting from it are merely items of damage arising from the same wrong. Id. We recognize that abuse of process and interference with contract are torts normally governed by the four year statute of limitations under section 95.11(3)(p). The single publication/single action rule, however, does not permit multiple actions when they arise from the same publication upon which a failed defamation claim is based. Ovadia v. Bloom, 756 So.2d 137, 141 (Fla. 3d DCA 2000); Orlando Sports, 316 So.2d at 609.
"The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm." Messenger v. Gruner + Jahr USA Publ'g, 994 F.Supp. 525, 531 (S.D.N.Y.1998), vacated on other grounds by, 208 F.3d 122 (2d Cir.2000); see also Trujillo v. Banco Central Del Ecuador, 17 F.Supp.2d 1334, 1339 (S.D.Fla.1998) (holding that false light privacy claim was barred by single publication/single action rule where it was based on the same facts giving rise to the claim for defamation). Thus, if the defamation count fails, the other counts based on the same publication must fail as well because the same privileges and defenses apply. See Fridovich v. Fridovich, 598 So.2d 65, 70 (Fla.1992) (successful invocation of a defamation privilege precludes a cause of action for intentional infliction of emotional distress if sole basis for latter is publication). Here, the rule then does not permit the actions for tortious interference and abuse of process when they arise from the same publication upon which the failed slander of title claim is based. A contrary result would allow Callaway to circumvent the statute of limitations by simply re-describing the slander of title action to fit a different category of intentional wrong. See Orlando Sports, 316 So.2d at 609.
In Ovadia, a television station broadcast a report on "Dangerous Doctors" featuring Dr. Ovadia. Ovadia sued, asserting defamation, conspiracy to defame, intentional interference with advantageous business relationships, invasion of privacy, and conspiracy to commit invasion of privacy. Id. at 138. The Third District affirmed summary judgment in favor of the defendants, holding that the statute of limitations on the defamation claims had run. Id. at 140. As a consequence, the court held that the other tort claims were also properly dismissed. Relying on Orlando Sports, the court concluded that the single publication/single action rule did not permit multiple actions to be maintained when they arose from the same publication upon which the failed defamation claim was based. Id. at 141.
Here, as in Ovadia, Callaway's tortious interference and abuse of process claims were properly dismissed upon dismissal of the disparagement of title claim. Also, as in Ovadia, Callaway's defamation claim was barred by the running of the statute of limitations on that action. The other two claims were based on the same facts and circumstances as the failed disparagement claim. In fact, the counterclaim merely re-alleges the same factual basis for the tortious interference and abuse of process claims that exist for the disparagement of title claim. Thus, as was the case in Ovadia, the trial court, here, correctly dismissed the other claims because the single publication/single action rule does not permit multiple actions to be maintained *209 when they arise from the same publication upon which a failed defamation claim is based. Cf. Primerica Fin. Servs., Inc. v. Mitchell, 48 F.Supp.2d 1363 (S.D.Fla.1999)(holding that tortious interference claim was not a defamation claim in disguise where plaintiffs pled other facts and circumstances necessary in support of claim for tortious interference); Heekin v. CBS Broad., Inc., 789 So.2d 355 (Fla. 2d DCA 2001)(holding that the single publication/single action rule was not a bar to action for false light invasion of privacy where plaintiff did not have a defamation action).
In affirming the trial court's application of the single publication/single action rule, we recognize that there are distinctions between disparagement/slander of title and personal defamation that make application of the single publication/single action rule difficult. The rule, in fact, has traditionally applied to actions for personal defamation. This court has noted that an action for disparagement of title actually falls within the group of torts collectively titled "injurious falsehoods." Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 742 So.2d 381, 386 (Fla. 4th DCA 1999). The Restatement of (Second) of Torts, Section 623A, recognizes that while an action for injurious falsehood is similar to defamation in that both involve "the imposition of liability for injuries sustained through publication to third parties of a false statement affecting the plaintiff," the two torts protect different interests. The defamation action protects the personal reputation of the injured party, while an action for injurious falsehood protects economic interests of the injured party against pecuniary loss. Restatement (Second) of Torts § 623A (1977). Prosser and Keaton suggest that injurious falsehood claims should be regarded as one form of intentional interference with economic relations rather than as a branch of the more general harm to reputation involved in libel and slander. See Page Keeton, et al., Prosser and Keeton on The Law of Torts § 128 at 964 (5th ed.1984).
Nevertheless, the courts of this state have afforded the two torts identical treatment, distinguishing them only to the extent that "slander of title" is defined as defamation of property interest, while libel and slander are defined as defamation of character of the person. Old Plantation, 68 So.2d at 181; Sailboat Key, 378 So.2d at 48. As previously discussed, the two year limitations period applicable to actions for libel or slander applies equally to actions for slander/disparagement of title. In fact, the supreme court, in justifying the application of the same statute of limitations to both causes of action stated, "`[w]e can see no substantial reason why the Legislature would make any distinction between an action involving defamation of title to property and one based upon defamation of the person.'" Old Plantation, 68 So.2d at 182 (citation omitted). Not only has the legislature failed to make a distinction, but neither have the courts in allowing a defendant in a slander of title action to enjoy the same privilege defenses which he would enjoy in a libel action. Procacci v. Zacco, 402 So.2d 425, 427 (Fla. 4th DCA 1981); Sailboat Key, 378 So.2d at 48.
Thus, where the courts of this state do not distinguish defamation of property from defamation of a person in the applications of the statute of limitations or privilege defenses, we cannot conclude that a plaintiff in an action for slander of title should not also be subject to the single action/single publication rule as is a plaintiff in a personal defamation claim. In reaching this conclusion, we note that Callaway failed to discuss the application or non-application of the single publication/single *210 action rule to actions for disparagement of title.
We, therefore, affirm the trial court's dismissal of Callaway's counterclaim where the disparagement of title claim was barred by the statute of limitations and, by application of the single publication/single action rule, the claims for tortious interference and abuse of process were also barred by the same defense.
GUNTHER, J., concurs.
GROSS, J., concurs specially with opinion.
GROSS, J., concurring specially.
I concur with the majority opinion. I write only to point out that if we were writing on a blank slate, the rationale for upholding the dismissal of the abuse of process and tortious interference causes of action would be tied more closely to the legislative intent behind the two-year statute of limitations.
Unburdened by previous cases, the better analysis here is more narrow than that employed by the majority. The opinion holds that the disparagement of title claim is barred by the statute of limitations. Old Plantation Corp. v. Maule Industries, Inc., 68 So.2d 180, 182 (Fla.1953) held that the two-year statute of limitation for libel and slander applied to disparagement or slander of title claims.[2] The wording of section 95.11(4)(g) is the same as section 95.11(6), Florida Statutes (1953), in force at the time of Old Plantation. After Old Plantation, the legislature did not create a new statute of limitations to apply to slander of title. The legislature should be understood to have established the policy that any action to recover damages for slander of title must be commenced within the two-year period. To allow a plaintiff to characterize slander of title as some other tort would enable a plaintiff to circumvent the short limitations period imposed by the legislature.
I prefer not to use the terminology employed by the majority, which states that the "single publication/single action rule... does not permit multiple actions when they arise from the same publication upon which a failed defamation claim is based." As authority, the majority cites to Orlando Sports Stadium, Inc. v. Sentinel Star Co., 316 So.2d 607, 609 (Fla. 4th DCA 1975), and Ovadia v. Bloom, 756 So.2d 137, 140-41 (Fla. 3d DCA 2000).
Although I believe Orlando Sports reached the correct result, unfortunately it cited to Easton v. Weir, 167 So.2d 245 (Fla. 2d DCA 1964), a case primarily dealing with the rule of Mims v. Reid, 98 So.2d 498 (Fla.1957). This principle holds that all injuries and damages sustained as a result of a single wrongful act "must be claimed or recovered in one action or not at all." Id. at 501. Reference to this rule confuses the analysis. Orlando Sports is better understood as not allowing a plaintiff to use creative pleading to bypass the notice requirement imposed by the legislature as a condition precedent to a libel action. See § 770.01, Fla. Stat. (2001).

ON MOTION FOR REHEARING
PER CURIAM.
Appellant's motion for rehearing is denied.
STONE and GUNTHER, JJ., concur.
*211 GROSS, J., concurs specially in the denial of the motion for rehearing with opinion.
GROSS, J., concurring specially.
I concur in the denial of appellants' motion for rehearing. I write only to clarify a portion of my concurring opinion issued October 2, 2002.
The concurring opinion imprecisely states that "the wording of section 95.11(4)(g) is the same as section 95.11(6), Florida Statutes (1953)." Appellants have pointed out that "the statutes are not the same." Appellants are correct. I intended the quoted sentence from the concurring opinion to refer to the use of the terms "libel" and "slander" and not to the entire sections.
NOTES
[1] We have considered, and reject, the argument that Old Plantation was overruled by statutory modifications to section 95.11 by its 1974 revision. We also note that the terms "slander of title" or "disparagement of title" are used interchangeably to refer to the same cause of action. See Bothmann v. Harrington, 458 So.2d 1163, 1168 (Fla. 3d DCA 1984); Sailboat Key, 378 So.2d at 48.
[2] "A group of torts recognized under the collective title of `injurious falsehood' are often interchangeably called slander of title, disparagement of property, or trade libel." Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 742 So.2d 381, 386 (Fla. 4th DCA 1999).