947 So.2d 1 (2006)
GANNETT CO., INC., Multimedia Holdings Corp., d/b/a The Pensacola News Journal and Multimedia, Inc., Appellants,
v.
Joe ANDERSON, Jr., Appellee.
No. 1D05-2179.
District Court of Appeal of Florida, First District.
October 20, 2006.
Dennis K. Larry and Donald H. Partington of Clark, Partington, Hart, Larry, Bond & Stackhouse, Pensacola, for Gannett Co., Inc.; Talbot D'Alemberte, Tallahassee, for Gannett Co., Inc.; Robert C. Bernius and Kevin M. Colmey of Nixon Peabody LLP, Washington, D.C., for Multimedia Holdings Corp., dba The Pensacola News Journal; and Robert G. Kerrigan of Kerrigan, Estess, Rankin & McLeod, LLP, Pensacola, for Multimedia, Inc.
Jon Mills, Gainesville; and Jon Kaney of Cobb & Cole, Daytona Beach, First Amendment Foundation; Lee Levine, Nathan Siegal, and Nicole A. Auerbach of Levine, Sullivan, Koch & Schulz, LLP, Washington, D.C. and David M. Snyder of David M. Snyder, P.A., Tampa for The Florida Press Association; ABC, Inc.; CBS Broadcasting, Inc.; The E.W. Scripps *2 Company; The Hearst Corporation; Media General, Inc.; The New York Times Company; and Tribune Company, Inc., Amicus Curiae, for Appellants.
Beverly A. Pohl of Broad and Cassel, Fort Lauderdale; Bruce S. Rogow of Bruce S. Rogow, P.A., Fort Lauderdale; and Willie E. Gary, Phyllis Gillespie and C.K. Hoffler of Gary, Williams Parenti, Stuart, for Appellee.
PADOVANO, J.
This is an appeal from a judgment awarding the plaintiff damages for an alleged invasion of his privacy. We conclude that the action is barred by the statute of limitations and therefore we reverse. The plaintiff claimed that the defendants invaded his privacy by publishing facts that portrayed him in a false light. Because this claim was not distinguishable in any material respect from a libel claim, it was subject to the two-year statute of limitations that applies to defamation actions and not the general four-year statute that applies to unspecified torts.

I. FACTS
The plaintiff, Joe Anderson, Jr., is the founder of Anderson Columbia Inc., a road paving company based in Lake City. He asserted a claim against the Pensacola News-Journal and its parent companies under the false light theory of invasion of privacy alleging that the News-Journal published an article implying that he had murdered his wife. Anderson prevailed on this claim, and a jury awarded him $18.28 million in compensatory damages.
In the initial complaint filed on March 21, 2001, Anderson sought damages against the defendants for libel and tortious interference with a business relationship. The libel claim was based on a number of statements he alleged were false and defamatory. These statements were made by the defendants in a series of newspaper articles published between December 13, 1998, and July 12, 2000.
Some of the articles could not be used to support an action for libel because they were beyond the applicable two-year statute of limitations. As to the statements made in these articles, the trial court granted a partial summary judgment for the defendants. Anderson then amended the complaint to restate his claim for libel and to include a new claim for invasion of privacy based on the false light theory.
The newly added count was based on statements made in a December 14, 1998, article entitled "Contractor Puts Squeeze on State" and subtitled, "Company Pursues Political Clout." The article reported on current and prior federal grand jury investigations and the related evidence illustrating Anderson Columbia's pattern of making and benefitting from extensive campaign contributions and political connections. In discussing the various federal investigations, the article stated that Anderson himself had been indicted in 1983 on federal bribery charges involving three Hillsborough County commissioners. The article reported that Anderson pled guilty to mail fraud and received a sentence of three years' probation and a $384,000 fine.
The article went on to explain that Anderson's probation for the conviction was later extended. This is the part of the article on which Anderson's invasion of privacy claim was founded. The relevant portion is as follows.
In 1988, while still on probation and before his conviction was reversed, Anderson shot and killed his wife, Ira Anderson, with a 12-gauge shotgun.
The death occurred in Dixie County just north of Suwannee where days before the shooting Joe Anderson had filed *3 for divorce but then had the case dismissed.
Law enforcement officials determined the shooting was a hunting accident.
A federal judge ruled that by having the shotgun, Anderson violated his probation, and the judge added two years to Anderson's probation.
Capt. Bab Stanley of the Florida Game and Fresh Water Fish Commission, was one of the officials who went to the scene of the shooting.
Anderson said that he and his wife were deer hunting when she walked one way down a road and he walked the other way, Stanley recalls. A deer ran between them and Joe Anderson fired twice. One shot hit the deer, the other hit his wife.
"One buckshot pellet hit her under the arm and went through her heart," Stanley said.
When investigators arrived on the scene, he said, they found that the other people in the hunting party had taken the deer back to the hunt club and were cleaning it.
"You have to understand, it's Dixie County," he said. "Back then, they shut down the schools for the first week of hunting season."
He said that Anderson had stayed behind at the shooting scene, and he described Anderson as looking "visibly upset" after the shooting.
Immediately after this passage, the article went on to explore the early lifting of Anderson Columbia's suspension from Escambia County's bid list due to direct pressure on county commissioners from Anderson Columbia's co-chairmen. Finally, it concluded by listing the company's federal campaign contributions and discussing the favors it had received in return.
Anderson claimed that this article falsely implied that he had murdered his wife and gotten away with it. The defendants moved to dismiss this count, as well, on the ground that it was barred by the two-year statute of limitations for defamation actions, but the trial court concluded that this count was governed by the four-year statute that applies to unspecified torts. Because the amended complaint was timely when measured by the four-year statute, the trial court denied the motion to dismiss the false light invasion of privacy claim.
As the parties were preparing for trial, Anderson filed a motion in limine to exclude all evidence relating to the circumstances of the shooting. He argued in this motion that, because the parties agreed that the statements in the article were true in a literal sense, the details of the shooting were legally irrelevant. Additionally, he maintained that evidence tending to prove or disprove the implication that he intentionally shot his wife would be highly prejudicial and that it would only serve to mislead or confuse the jury. The trial court granted the motion on this point and excluded any evidence related to the shooting.
The libel and tortious interference claims were voluntarily dismissed, and the case proceeded to trial on December 1, 2003, on the single count of invasion of privacy based on the false light theory. The jury returned a verdict for the plaintiff, and when the award of damages was reduced to a judgment, the defendants sought review in this court.

II. ANALYSIS
Among other arguments made in the appeal, the defendants contend that the action for false light invasion of privacy was barred by the statute of limitations. They assert that Anderson merely recast *4 his unsuccessful libel claim as a false light invasion of privacy claim to circumvent the effect of section 95.11(4)(g), Florida Statutes, which places a two-year limitation on defamation actions. In response, Anderson contends that the false light invasion of privacy claim is a distinct tort, which differs from a claim of libel in the respect that it can be asserted even if the statement at issue is true. Thus, he argues that the claim is governed by section 95.11(3)(p), Florida Statutes, which sets a four-year limitation period for any action not governed by a more specific statute. To properly evaluate these competing arguments we must address the history of the cause of action for invasion of privacy based on the false light theory and consider the merits of a broader controversy regarding its validity.

A. The False Light Cause of Action
The cause of action was first defined in 1960, when Dean William Prosser proposed a division of invasion of privacy cases into four discrete categories: (1) intrusion upon the seclusion of another, (2) commercial appropriation of one's name or likeness, (3) publication of private facts, and (4) false light. William L. Prosser, Privacy, 48 Cal. L. Rev 382, 389 (1960). The fourth kind of privacy claim differs significantly from the first three in that it is the only one that requires proof that the defendants offered information about the plaintiff that was false.
The false light theory of invasion of privacy was later incorporated into the Restatement of Torts, which defines the cause of action as follows:
One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
(a) the false light in which the other was placed would be highly offensive to a reasonable person, and
(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed
Restatement (Second) of Torts § 652E. False light differs from defamation in that it may be based on a statement that is not defamatory. It is enough to show that the statement is one that would be highly offensive to a reasonable person. False light also differs in the respect that it is designed to protect an emotional harm, whereas defamation affords a remedy for damage to a person's reputation. However, the essential characteristic that false light shares with defamation is that both actions require proof that the defendant provided false information about the plaintiff.
Dean Prosser's formulation of the four kinds of privacy claims is often repeated in general discussions about the right of privacy, but the notion of allowing a separate cause of action based on false light invasion of privacy is not one that is universally accepted. Some courts have simply declined to recognize the cause of action. See Denver Publishing Co. v. Bueno, 54 P.3d 893 (Colo.2002); ELM Med. Lab., Inc. v. RKO Gen., Inc., 403 Mass. 779, 532 N.E.2d 675, 681 (1989); Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231, 235 (Minn. 1998); Yeager v. Local Union 20, 6 Ohio St.3d 369, 453 N.E.2d 666, 669-670 (1983) Brown v. Pearson, 326 S.C. 409, 483 S.E.2d 477, 484 (1997); Falwell v. Penthouse Int'l, Ltd., 521 F.Supp. 1204, 1206 (W.D.Va.1981); Zinda v. La. P. Corp., 149 Wis.2d 913, 440 N.W.2d 548, 555 (1989). Others accepted the theory at first, but later rejected it after further analysis. See Renwick v. News & Observer Publ. *5 Co., 310 N.C. 312, 312 S.E.2d 405, 411-12 (1984); Cain v. Hearst Corp., 878 S.W.2d 577 (Tex.1994).
One reason that is often given for rejecting the false light cause of action is that it duplicates a cause of action for defamation while allowing the plaintiff to escape the strict requirements that are designed to ensure freedom of expression. For example, the court in Cain reviewed all of the false light claims brought in Texas and noted that each one could have been brought under another legal theory.[1] Based on this observation, the court concluded that, if it were to recognize a false light tort in Texas, it would "largely duplicate several existing causes of action, particularly defamation." Cain, 878 S.W.2d at 580. On balance, the court decided that the benefit of the cause of action, that it might afford a distinct remedy in a few unique situations, was outweighed by the potential danger of the cause of action, that it "would unacceptably derogate constitutional free speech rights under both the Texas and United States Constitution." Id. at 581.
Other courts have also expressed the concern that a false light action lacks the protections that apply in defamation cases. In a false light case, the defendant is not afforded an opportunity to correct an error by making a retraction; reporting privileges may or may not apply; the alleged false impression may be actionable even in the absence of malice; and the cause of action is governed by a longer statute of limitations. Based on concerns such as these, the North Carolina Supreme Court reasoned in Renwick that the additional remedies that might be made available by recognizing a claim for false light invasion of privacy "are not sufficient to justify the recognition in this jurisdiction of such inherently constitutionally suspect claims for relief." Renwick, 312 S.E.2d at 413.
The cause of action is recognized, or at least not directly repudiated, in the majority of states but it remains the subject of a heated debate among judges and legal scholars. See Patricia Avidan, Protecting the Media's First Amendment Rights in Florida: Making False Light Plaintiffs Play by Defamation Rules, 35 Stetson L.Rev. 227 (2005); Kelso, False Light Privacy: A Requiem, supra; (1992); Harvey L. Zuckerman, Invasion of Privacy  Some Communicative Torts Whose Time Has Gone, 47 Wash. & Lee L.Rev. 253 (1990). As the Texas Supreme Court noted in Cain, "false light remains the least recognized and most controversial aspect of invasion of privacy." Cain, 878 S.W.2d at 579 (citing Bruce W. Sanford, Libel and Privacy, § 11.4.1 at 567 (2d ed.1991)). Some legal commentators have argued that false light should not be recognized as a tort, see, e.g., Diane Leenheer Zimmerman, False Light Invasion of Privacy: The Light That Failed, 64 N.Y.U. L.Rev. 364, 452 (1989) ("[T]he wiser course may be for states to eliminate false light altogether"), while others have argued that it should be retained, see, e.g., Nathan E. Ray, Note, Let There Be False Light: Resisting the Growing Trend Against an Important Tort, 84 Minn. L.Rev. 713 (2000). At best, the attempt to recognize a distinct cause of action for false light invasion of *6 privacy has caused some confusion in the courts.[2]
That confusion is nowhere more evident than it is in the present case. The trial court began by applying a distinction in the case law (that a cause of action for false light invasion of privacy can be asserted even if the statements about the plaintiff are true) and went from there to the erroneous conclusion that it was not necessary to prove that the statements made about the defendant created a false impression. The issue the court allowed the parties to address at trial was whether the article created the impression that Anderson murdered his wife. Anderson was never required to prove that this impression was false, nor did the News Journal ever have an opportunity to prove that it was true. The most important element (that the defendants created a false impression about the plaintiff) was overlooked in an effort to make sense of the law that applies false light privacy claims.
We are not aware of any case in which the Supreme Court of Florida has directly held that a cause of action based on false light invasion of privacy is cognizable in the Florida courts. The supreme court restated Dean Prosser's formulation of the four kinds of invasion of privacy claims in a footnote of its opinion in Agency for Health Care Administration v. Associated Industries of Florida, Inc., 678 So.2d 1239, 1252 (Fla.1996). But, while the court tacitly recognized the existence of the false light theory in the footnote, the case itself did not involve a false light action.
Several other supreme court opinions similarly refer to false light claims but do not make these references in such a way as to endorse the validity of a cause of action for invasion of privacy based on the false light theory. The opinion in Allstate Insurance Co. v. Ginsberg, 863 So.2d 156 (Fla.2003), repeated the general statement in Associated Industries regarding the four kinds of privacy claims, but it did so merely to provide historical background for the court's answer to a certified question regarding an insurer's duty to defend. As Justice Anstead pointed out in his concurring and dissenting opinion in Ginsberg, general statements such as these are made not to adopt or reject a particular cause of action, but rather to "provide some organizational structure" to the various kinds of claims that have been identified by the case law or other legal authorities. Ginsberg, 863 So.2d at 164, (Anstead, J., concurring).
The supreme court also mentioned false light claims in Tyne v. Time Warner Entertainment Co., 901 So.2d 802 (Fla.2005) and Cape Publications Inc. v. Hitchner, 549 So.2d 1374 (Fla.1989), as well as in Justice Overton's concurring opinion in Forsberg v. Housing Authority of Miami, 455 So.2d 373 (Fla.1984), but these cases did not directly approve of this theory of liability. In Tyne, the court answered a certified question on another point in a federal case in which the court had granted summary judgment on the plaintiff's claims, including a false light claim. The court mentioned false light claims in Cape Publications, but the holding of that case was that the evidence was insufficient to sustain a private-facts privacy claim, because the information was a matter of public interest. Finally, the Forsberg case involved the validity of the public records *7 law. We conclude from all of these decisions that, although the supreme court has recognized the potential existence of a cause of action for invasion of privacy based on a false light theory, it has never had occasion to decide whether such a cause of action actually exists in Florida.
The Second District Court of Appeal directly recognized and approved a false light invasion of privacy claim as a cause of action in Heekin v. CBS Broadcasting, Inc., 789 So.2d 355 (Fla. 2d DCA 2001), but, as we shall explain, we disagree with the Heekin decision. Other district courts have tacitly recognized false light privacy claims in theory, but in no other instance has a Florida court ever upheld a claim based on this theory. See Cox v. Wiod, Inc., 764 So.2d 671 (Fla. 4th DCA 2000) (reversing the dismissal of various claims including false light privacy on the ground of failure to prosecute); Ovadia v. Bloom, 756 So.2d 137 (Fla. 3d DCA 2000) (dismissing a false light claim under the single publication rule); Armstrong v. H & C Commc'ns, Inc., 575 So.2d 280 (Fla. 5th DCA 1991) (listing the four types of privacy claims but concluding that the complaint did not fall into any of the categories); Williams v. City of Minneola, 575 So.2d 683 (Fla. 5th DCA 1991) (listing the four kinds of privacy claims in a case not involving the false light theory); Byrd v. Hustler Magazine, Inc., 433 So.2d 593 (Fla. 4th DCA 1983) (reversing a judgment in a libel and false light case on the ground that the plaintiff failed to prove falsity); Loft v. Fuller, 408 So.2d 619 (Fla. 4th DCA 1982) (listing the four kinds of privacy claims in a privacy action based on the theory of unauthorized use of private facts); Cape Publications, Inc. v. Bridges, 387 So.2d 436 (Fla. 5th DCA 1980) (stating in dictum that actual malice would be required to prove a false light claim).
A review of the Florida appellate decisions that mention the false light theory reveals that the courts have often repeated Dean Prosser's summary of the four kinds of invasion of privacy claims, but without much analysis. In no case has a Florida appellate court affirmed a judgment for the plaintiff in a false light invasion of privacy case. And, with the apparent exception of the Heekin case, no Florida appellate court has upheld a complaint on the ground that it states a cause of action for invasion of privacy based on the false light theory.

B. The Statute of Limitations
We do not know whether the Supreme Court of Florida would recognize a cause of action for false light invasion of privacy were it to consider the matter in the context of an actual case or controversy such as this one. In any event, we are certain that an action based on the false light theory cannot be used, as it was in the present case, to circumvent the shorter limitations period that applies to defamation actions. Because the plaintiff's false light claim is not distinguishable from an action for libel, it is subject to the two-year statute that applies to defamation actions.
When the statute of limitations issue was first presented in this case, the trial court was bound to apply the precedent set by the Second District Court of Appeal in Heekin. The Second District held that a false light invasion of privacy claim is governed by the four-year statute of limitations for unspecified torts, not the two-year statute for libel and slander, even though the "gravamen of [the plaintiff's] claim for false light invasion of privacy was the same as a claim for libel or slander." Heekin, 789 So.2d at 357. We reject this holding and certify conflict with Heekin.
The Second District recognized an exception that would justify the use of the two-year statute of limitations for libel and *8 slander if the false light invasion of privacy claim is "based on the publication of the same false facts."[3]Heekin, 789 So.2d at 358. However, the court concluded that the exception did not apply, because the plaintiff conceded that the facts giving rise to his invasion of privacy claim were true. The plaintiff in this case also conceded the truth of the facts stated in the news article that is the subject of his claim, but we are unable to accept this distinction as a reason to apply a longer statute of limitations. Whether the claim is based on the publication of false facts or the publication of true facts that are stated in such a way as to create a false impression is a distinction of no consequence. In either case, the falsity of what the publication communicates is the essence of the claim.
This case illustrates the point. The difference between the original libel claim, which was barred by the two-year statute, and the subsequent false light claim, which was not, was nothing more than the change in the way in which the plaintiff characterized the article. In the original complaint, the plaintiff quoted the text of the December 14, 1998, article and alleged that the article was "false and defamatory." In the amended complaint, he quoted the text of the same article but alleged that the article was "worded in such a way as to portray [the plaintiff] in a false light." Surely the protections afforded by the statute of limitations cannot be undone by engaging in a semantic exercise such as this.
To the extent that false light invasion of privacy overlaps defamation, it must be treated the same way. Otherwise, the relatively short statute of limitations and other strict requirements in the law of defamation would have no effect at all. Plaintiffs would always choose the easier course of asserting a false light invasion of privacy claim. This concern is one that was expressed by Dean Prosser himself. He speculated that if the tort of false light invasion of privacy were not properly limited, it could eventually swallow up the law of defamation:
It is here, however that one disposed to alarm might express the greatest concern over where privacy may be going. The question may well be raised, and apparently still is unanswered, whether this branch of the tort is not capable of swallowing up and engulfing the whole law of public defamation; and whether there is any false libel printed, for example, in a newspaper, which cannot be redressed upon the alternative ground. If that turns out to be the case, it may well be asked, what of the numerous restrictions and limitations which have hedged defamation about for many years, in the interest of freedom of the press and the discouragement of trivial and extortionate claims? Are they of so little consequence that they may be circumvented in so casual and cavalier a fashion?
William Prosser, Privacy, 48 Cal.L.Rev. 382, 401 (1960). These are precisely the *9 reasons why a false light claim cannot be used to revive a time-barred defamation claim.
Courts in other jurisdictions have resolved the problem, as we have here, by applying the shorter of the two statutes when the false light action is based on a defamatory statement. See, e.g., Magenis v. Fisher Broadcasting, Inc., 103 Or.App. 555, 798 P.2d 1106 (1990); Eastwood v. Cascade Broadcasting Co., 106 Wash.2d 466, 722 P.2d 1295 (1986); Smith v. Esquire, Inc., 494 F.Supp. 967 (D.Md.1980); Robinson v. Vitro Corp., 620 F.Supp. 1066 (D.Md.1985).[4] As the court explained in Smith, to hold otherwise "would allow a plaintiff, in any defamation action where there has been a general publication, to avoid the otherwise applicable [shorter defamation statute of limitations] merely by phrasing the cause of action in terms of invasion of privacy." Smith, 494 F.Supp. at 970. This result would render the shorter statute of limitations for defamation actions meaningless. See id.; see also Magenis, 798 P.2d at 1109; Eastwood, 722 P.2d at 1298.
The wisdom of these holdings becomes even more apparent if we consider the purpose that is served by imposing a time limitation on the right to initiate a civil action. The court focused on this point in Gashgai v. Leibowitz, 703 F.2d 10 (1st Cir.1983), in deciding that a false light claim was subject to the two-year statute of limitations for defamation actions and not the longer period for other torts. In support of this decision, the court relied on the often cited opinion in Uhl v. Columbia Broadcasting Systems, 476 F.Supp. 1134, 1137 (W.D.Pa.1979):
The purpose of statutes of limitations is to allow a plaintiff a reasonable time to realize the nature and extent of his injuries and file a lawsuit and, after that time passes, to bar actions and thereby relieve potential defendants of the anxiety of litigation. The appropriate length of statutes of limitations is governed by the kinds of injuries which particular causes of action protect and the speed at which they become apparent to the plaintiff. The injuries which may result from defamation and invasion of privacy are similar in nature and injuries resulting from defamation may arise, as a general rule, no faster than those resulting from invasion of privacy. Publications which may give rise to liability under both torts travel through the same media at the same speed. That a particular act may give rise to a cause of action under both torts but that the two statutes of limitations may differ in such cases baffles the court as well as the layman and gives substance to Dickens' observation about the nature of the law.
With these principles in mind, the court in Gashgai concluded that it could not apply a longer limitations period to the plaintiff's false light claim. As the court explained, *10 "assigning a [longer] statute of limitations for `false light' actions would often in the many cases where `false light' actions and defamation coincide defeat the obvious legislative intent to impose a relatively short period of limitations for the bringing of defamation actions." Gashgai, 703 F.2d at 13.
We have considered the arguments that have been made for treating false light as a distinct tort with its own statute of limitations. One such argument is that false light claims should be treated differently because they involve a different kind of damages. Defamation protects against harm to the plaintiff's reputation, whereas false light was designed to protect against emotional injury. This statement is correct in theory but, in practice, nearly all false light cases involve a claim that the false impression harmed the plaintiff's reputation. See Magenis, 798 P.2d at 1109; Eastwood, 722 P.2d at 1297-99; Gashgai, 703 F.2d at 12; Prosser, supra, at 400; Zimmerman, supra, at 428-432. This case is typical. The plaintiff alleged that he suffered harm to "his reputation in the community," and the jury awarded him money damages on the theory that the harm to his reputation resulted in the denial of permits to build a cement plant. Unlike a classic invasion of privacy case, this was not about emotional harm.
The fact that the damages are most often the same in both actions is one of the reasons the court gave in Sullivan v. Pulitzer Broadcasting Co., 709 S.W.2d 475 (Mo.1986), to support its decision to apply the statute of limitations for defamation to a false light claim. In that case, a former hospital administrator brought a false light action against a television station after the statute of limitations had expired for asserting a defamation claim. He alleged in the complaint that the false impression created by the defendant damaged his reputation as well as his right to be let alone. Noting that "[i]t is not altogether clear that there is a difference in the type of damage that can be recovered," the court treated the false light claim as if it were a defamation claim and held that it was time-barred.[5]Id. at 480. As the court explained:
The case at bar is nothing more than the classic defamation action where one party alleges that the other published a false accusation concerning a statement of factin this case, a charge of criminal conduct or wrongdoing. In his petition, appellant has merely substituted the word "false" for the phrase "false impression"; and, rather than alleging an injury to reputation, appellant alleges an injury to his reputation and an injury to his right to be let alone.
Id. at 481. The parallel between the allegations in Sullivan and those in the present amended complaint is striking. At the heart of both cases is a claim that the alleged false impression caused harm to the plaintiff's reputation.
Another argument for treating false light claims differently is that they can be based on statements that are offensive to a reasonable person, even if they do not rise to the level of defamation. This distinction, like the one relating to the nature of the damages, is largely academic. Most false light claims involve statements that would also be defamatory. See, e.g., Veilleux v. National Broadcasting Co., 206 F.3d 92 (1st Cir.2000); Jensen v. Sawyers, 130 P.3d 325, 329-337 (Utah 2005) (applying *11 defamation statute of limitations to false light invasion of privacy claim, because plaintiff alleged statements that were defamatory); Sullivan, 709 S.W.2d at 479; Smith, 494 F.Supp. at 969-70; Magenis, 798 P.2d at 1109; Eastwood, 722 P.2d at 1297-99; Gashgai, 703 F.2d at 12; see also Zimmerman, supra, at 386. Again, this case is typical. The plaintiff contends that the article in question implied that he murdered his wife. That implication is not merely offensive, it is defamation. We do not rule out the possibility that a false light claim could be based on a statement that falls short of defamation, but that is not an accurate characterization of the claim in this case.
A final argument for treating false light as a distinct tort with its own statute of limitations is that it can be based on statements that are true. The fallacy in this argument is that a claim of libel can also be asserted on the theory that the defamatory fact was implied. See Brown v. Tallahassee Democrat, Inc., 440 So.2d 588 (Fla. 1st DCA 1983); Boyles v. Mid-Fla. TV Corp., 431 So.2d 627 (Fla. 5th DCA 1983). There is no difference between a libel by implication claim and a false light invasion of privacy claim if the statements are defamatory in both cases. Consequently, we perceive no reason to apply a longer statute of limitations to false light claims.

III. CONCLUSION
In summary, we conclude that an invasion of privacy case based on the false light theory is governed by the two-year statute of limitations that applies to defamation actions and not the four-year statute that applies to unspecified torts.
As we are not able to reconcile this conclusion with the Second District's decision in Heekin, we certify that our decision in this case conflicts with Heekin. Irrespective of the decisional conflict, we believe that our decision passes upon an important issue that should be addressed by the Supreme Court of Florida. Accordingly, we certify the following question as a question of great public importance:
Is an action for invasion of privacy based on the false light theory governed by the two-year statute of limitations that applies to defamation claims or by the four-year statute that applies to unspecified tort claims?
For these reasons, we reverse the judgment for the plaintiff and remand the case to the trial court with instructions to render a judgment for the defendants. We have not discussed all of the arguments for reversal, but our decision in the case makes it unnecessary to determine whether the judgment is erroneous for other reasons. The disposition also renders moot the issue raised on cross-appeal. We therefore decline to address that issue, as well.
Reversed.
BENTON, J., concurs. LEWIS, J., concurs in result with written opinion.
LEWIS, J., concurring in result only.
I agree with the majority that the trial court erred in applying the four-year statute of limitations set forth in section 95.11(3)(p), Florida Statutes, which applies to "[a]ny action not specifically provided for in these statutes," including invasion of privacy actions, under the circumstances of this case. However, I respectfully disagree with the majority's finding that false light claims constitute a subcategory of defamation and its conclusion that the two-year statute of limitations applicable to actions for libel or slander governs all invasion of privacy actions premised on the false light theory. Generally, false light actions fall under the invasion of privacy *12 umbrella, see Agency for Health Care Administration v. Associated Industries of Florida, Inc., 678 So.2d 1239, 1252 n. 20 (Fla.1996), and are, therefore, subject to the four-year limitations period contained in section 95.11(3)(p). Heekin v. CBS Broad., Inc., 789 So.2d 355, 358 (Fla. 2d DCA 2001). The two-year statute of limitations applicable to libel and slander actions applies to a false light claim only where a plaintiff attempts to avoid the two-year limitations period by recasting a libel or slander claim as one for false light invasion of privacy based on the same publication. See Heekin, 789 So.2d at 358. Because the Second District properly reached this conclusion in Heekin, I am also unable to agree with the majority's decision to certify conflict with that opinion. For these reasons, I concur in the result only.
In his initial complaint filed March 21, 2001, plaintiff claimed that defendants committed libel and tortious interference with contractual and business relations by publishing a series of articles containing various false and defamatory statements between December 13, 1998, and July 12, 2000, including a December 14, 1998, article entitled "Contractor Puts Squeeze on State" and subtitled "Company Pursues Political Clout." Because some of the articles in the series were published more than two years before the action was filed, they could not be used to support the libel claim, which was subject to the two-year limitations period contained in section 95.11(4)(g), Florida Statutes. Thus, the trial court granted partial summary judgment in defendants' favor with regard to those articles. In an apparent attempt to get around the statute of limitations, plaintiff subsequently filed an amended complaint containing a false light invasion of privacy claim based on the December 14, 1998, article. He alleged that in that article, defendants published unnecessary and tangential facts that portrayed him in a false light by implying that he murdered his wife and that he was able to avoid criminal liability because of his relationship with public officials. Defendants moved to dismiss the false light claim on the ground that it was also barred by the two-year statute of limitations, but the trial court denied the motion, finding that the claim was governed by the four-year limitations period applicable to invasion of privacy actions.
In Cason v. Baskin, 155 Fla. 198, 20 So.2d 243, 250 (1945), the supreme court found that "there is a right of privacy, distinct in and of itself and not merely incidental to some other recognized right, and for breach of which an action for damages will lie." The court subsequently noted that there are four types of wrongful conduct that can be remedied through an invasion of privacy action: (1) appropriation of a person's name or likeness to obtain some benefit, (2) intrusion, physically or electronically, into a person's private quarters, (3) public disclosure of private facts that are true but which a reasonable person would find objectionable, and (4) false light in the public eye, or publication of facts that place a person in a false light even though the facts might not be defamatory. See Agency for Health Care Admin., 678 So.2d at 1252 n. 20. The majority asserts that the supreme court's various references to false light claims cannot be construed as endorsing the validity of a false light invasion of privacy action. I disagree. In Allstate Insurance Co. v. Ginsberg, 863 So.2d 156, 162 (Fla.2003), the supreme court, in determining whether unwelcome conduct such as touching in a sexual manner and making sexually offensive comments stated a cause of action for the Florida common law tort of invasion of privacy, set forth, "[W]e here affirm that the statement in [Agency for Health Care *13 Administration] does correctly state what is included in Florida's tort of invasion of privacy." Contrary to the majority's assertion and despite the fact that a false light claim was not at issue in Ginsberg, that statement is more than a tacit recognition of the existence of a cause of action for invasion of privacy based on the false light theory. It is an affirmative recognition of false light as a valid cause of action that falls under the invasion of privacy umbrella, which we are bound to follow. It is not within the province of this Court to remove false light from that umbrella and reclassify it as a subcategory of defamation.
Because the supreme court has recognized invasion of privacy as a distinct cause of action and categorized false light as a subcategory of invasion of privacy, I agree with the Second District's approval of false light invasion of privacy as a valid action and its determination that the four-year statute of limitations contained in section 95.11(3)(p) applies to all invasion of privacy actions, including those based on the false light theory. See Heekin, 789 So.2d. at 358; see also Haskins v. City of Ft. Lauderdale, 898 So.2d 1120, 1123 (Fla. 4th DCA 2005) (stating that in Florida, the statute of limitations for invasion of privacy claims is four years, citing section 95.11(3)); Putnam Berkley Group, Inc. v. Dinin, 734 So.2d 532, 536 (Fla. 4th DCA 1999) (finding that a common law invasion of privacy claim was barred by the four-year limitations period in section 95.11(3)(p)); Houston v. Fla.-Ga. Television Co., 192 So.2d 540, 542 (Fla. 1st DCA 1966) (holding that the four-year catch-all statute of limitations applies to actions for invasion of privacy because such actions are not specifically provided for or referred to elsewhere in chapter 95, Florida Statutes). Accordingly, I am unable to agree with the majority's decision to certify conflict with Heekin.
Furthermore, as recognized in Heekin, there is an exception to the general rule where a plaintiff attempts to avoid the two-year statute of limitations applicable to libel and slander actions by simply recasting a libel or slander claim as one for false light invasion of privacy. 789 So.2d at 358. This is because in Florida, a single publication gives rise to a single action, and different injuries resulting from the same publication are merely separate damages resulting from a single wrong. See Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp., 831 So.2d 204, 208 (Fla. 4th DCA 2002). Under the single publication/single action rule, multiple actions are not permitted where they arise from the same publication upon which a failed defamation claim is based. Id.; Ovadia v. Bloom, 756 So.2d 137, 141 (Fla. 3d DCA 2000). "`The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm.'" Callaway Land & Cattle Co., Inc., 831 So.2d at 208 (citation omitted). Thus, where, as here, a plaintiff's libel claim is barred by the two-year statute of limitations, his false light invasion of privacy claim based on the same publication is also barred because the same privileges and defenses apply to both claims. See id.
Here, plaintiff initially sought damages against defendants for libel based on the publishing of a series of newspaper articles. After the trial court granted partial summary judgment in favor of defendants on the ground that some of the articles could not be used to support his libel claim because the statute of limitations for libel actions had expired, plaintiff amended his complaint, adding a claim of false light invasion of privacy. The new claim was based on a single article, which plaintiff *14 had also relied on in support of his prior libel claim. Thus, plaintiff simply recast his libel claim as one for false light invasion of privacy in an attempt to circumvent the two-year limitations period applicable to libel actions. As such, this case falls within the exception recognized in Heekin, and the false light invasion of privacy claim was also barred by the two-year statute of limitations. The trial court's erroneous application of the four-year limitations period to plaintiff's false light claim allowed him to avoid the statute of limitations applicable to his libel claim by simply renaming it to fit a different category of wrong. See Callaway Land & Cattle Co., Inc., 831 So.2d at 208; Heekin, 789 So.2d at 358.
Accordingly, although I agree with the majority that in this case, the trial court erred in applying the four-year catch-all statute of limitations to plaintiff's false light claim, I disagree with its holding that all false light invasion of privacy claims are governed by the two-year statute of limitations applicable to defamation claims.
NOTES
[1] The opinion focused on Texas law, but the point the court was making could be applied, as well, to the entire body of false light decisions throughout the United States. After reviewing six hundred false light cases, one commentator came to the conclusion that the cause of action most often duplicates defamation and "that there is not even a single good case in which false light can be clearly identified as adding anything distinctive to the law." See J. Clark Kelso, False Light Privacy: A Requiem, 32 Santa Clara L.Rev. 783, 785 (1992).
[2] See Kelso, False Light Invasion of Privacy: A Requiem, supra, at 787. After identifying all of the potential problems the courts have encountered in an effort to recognize the tort of false light invasion of privacy, the author concluded that the worst of them was that "the supposed existence of false light has confused courts and practitioners, who remain uncertain as to the scope of the tort and the type of defenses which may be asserted."
[3] Judge Lewis expresses the view in his concurring opinion that the exception in Heekin applies because the plaintiff originally asserted a series of libel claims and then recast one of those claims as a false light invasion of privacy claim. It is true that there was no prior complaint in Heekin whereas the present case involves an attempt to restate a claim, but that would not trigger the exception. As we understand the exception stated in Heekin, it would apply only if the plaintiff asserts a claim "based on publication of the same false facts." The Heekin court declined to apply the exception not because there had been no prior complaint in that case, but rather because the false light invasion of privacy claim was, in the court's view, different from any defamation claim that could have been asserted.
[4] Applying the statute of limitations for defamation to false light actions is not a new idea. The possibility was raised in the Restatement shortly after it was adopted. The official comments provide some guidance in deciding whether the various common law restrictions and privileges attending defamation, including the statute of limitations, should apply to claims brought under the false light theory. The drafters suggested that it may be appropriate to apply the defamation statute to such claims:

When the false publicity is also defamatory so that either action can be maintained by the plaintiff, it is arguable that limitations of long-standing that have been found desirable for the action for defamation should not be successfully evaded by proceeding upon a different theory of later origin, in the development of which the attention of the courts has not been directed to the limitation.
Restatement (Second) of Torts § 652E, Comment e, at 399.
[5] The need to limit reputation damages to defamation claims is also discussed in detail in Morrison v. National Broadcasting Co., Inc., 19 N.Y.2d 453, 280 N.Y.S.2d 641, 227 N.E.2d 572 (1967), a case stemming from the infamous scandal surrounding the television quiz show, "Twenty-One," in the 1950s.