609 So.2d 14 (1992)
Javier H. LONDONO, M.D., et al., Petitioners,
v.
TURKEY CREEK, INC., etc., et al., Respondents.
No. 76765.
Supreme Court of Florida.
October 29, 1992.
*15 John F. Roscow, III of Scruggs & Carmichael, P.A., Gainesville, James J. Pratt of Boyd & Jenerette, Jacksonville, and Andrew G. Patillo, Jr. and Betty D. Marion of Pattillo & McKeever, P.A., Ocala, for petitioners.
Michael W. Jones of Michael W. Jones, P.A., Gainesville, for respondents.
Robert A. Butterworth, Atty. Gen., and Mary E. Greene, Asst. Atty. Gen., Tallahassee, amicus curiae for the Citizens of the State of Fla.
HARDING, Justice.
We have for review Turkey Creek, Inc. v. Londono, 567 So.2d 943 (Fla. 1st DCA 1990), in which the decision of the First District Court of Appeal conflicts with Cypher v. Segal, 501 So.2d 112 (Fla. 4th DCA 1987). We accepted jurisdiction based on article V, section 3(b)(3) of the Florida Constitution, and we approve the decision below and disapprove Cypher to the extent that it conflicts with this opinion.
Turkey Creek, Inc. (Turkey Creek) is a Florida corporation whose primary business is the development and sale of residential land in a planned unit development (PUD) known as Turkey Creek. Turkey Creek operates its development through a group of homeowners' associations, which are governed by "Declarations of Covenants, Conditions, and Restrictions" and bylaws. Javier Londono, M.D., Charles A. Williams, Jr., and John Hoce (Homeowners) are residents of this residential development.
In late 1981 and early 1982, disagreements developed between Turkey Creek and the Homeowners regarding the regulation and operation of the PUD. In January 1982, the Homeowners formed the "Turkey Creek Property Owners' Ad Hoc Committee." In March 1982, the Homeowners filed suit against Turkey Creek seeking a declaratory judgment and damages in connection with Turkey Creek's operation of the PUD. Turkey Creek filed its answer in January 1984, and the trial court entered a final judgment in Turkey Creek's favor in *16 October 1984. The trial court awarded Turkey Creek the costs of the proceedings in March 1985.[1]
Turkey Creek subsequently sued the Homeowners for slander of title, malicious prosecution, tortious interference with contractual rights, tortious interference with an advantageous business relationship, and conspiracy to interfere with Turkey Creek's contractual rights and business relationships. The suit was based on allegations that from early 1982 through May 1984, the Homeowners publicly distributed false information that the land within the PUD was in "distress" and that the title was unmarketable and impaired. Among other things, the Homeowners distributed this false information to local zoning officials, who denied or delayed Turkey Creek's petitions for rezoning based on the Homeowners' statements.
Turkey Creek also alleged that the Homeowners maliciously distributed this false information to Owens Illinois Development Corporation (OIDC), with whom Turkey Creek had a contractual relationship. The contract allowed OIDC a series of options to purchase land within the project, and in turn gave Turkey Creek the development rights on the purchased property. Thus, Turkey Creek benefited from both the sale and the development of the property. Turkey Creek alleges that because of the Homeowners' intentional distribution of malicious and false information, OIDC abandoned its business relationship with Turkey Creek. The loss of the OIDC contract cost Turkey Creek an estimated $4,000,000 in expected profits.
The trial court also dismissed Turkey Creek's malicious prosecution action because the court found that Turkey Creek had elected its remedy by obtaining a cost judgment in the earlier action, thus precluding it from seeking further relief. The trial court dismissed the slander of title claim finding that the claim was a compulsory counterclaim to the 1982 action. Finally, the trial court dismissed Turkey Creek's claims for tortious interference with a contract and with an advantageous business relationship, and for a civil conspiracy because the complaint failed to state a cause of action.[2]
The district court reversed the trial court's dismissal on each count of Turkey Creek's complaint. The Homeowners seek review of the district court's opinion and raise three issues: 1) whether Turkey Creek is barred from maintaining a malicious prosecution action because of its election to tax costs in the Homeowners' declaratory action; 2) whether Turkey Creek failed to state a cause of action for claims of tortious interference with a contract, tortious interference with an advantageous business relationship, and civil conspiracy to interfere with Turkey Creek's contractual rights and business relationships[3]; and 3) whether Turkey Creek is barred from a slander of title action because the claim was a compulsory counterclaim to the Homeowners' declaratory action. The Attorney General for the State of Florida (State) filed an amicus brief on behalf of the Homeowners raising the issue of whether the Homeowners' alleged misconduct was privileged under the First Amendment right to petition the government.
The first issue for review is whether Turkey Creek may maintain a malicious prosecution action after the trial court awarded costs to Turkey Creek for successfully *17 defending the Homeowners' declaratory action. The district court held that a plaintiff may bring a "[malicious prosecution] suit for damages which could not have been recovered in the original action, such as compensation for harm to reputation." Turkey Creek, 567 So.2d at 948. The district court acknowledged that its holding conflicted with the Fourth District Court of Appeal's holding in Cypher.
In Cypher, the district court held that a plaintiff in a malicious prosecution action, who elects to recover costs at the conclusion of an initial action, was precluded from later suing for additional damages. Id. 501 So.2d at 114. The Cypher court rejected the argument that the plaintiff could proceed on claims not covered by the final judgment in the initial action. Id. The district court held that the plaintiff
had a choice at the conclusion of the initial suit to pursue an independent cause of action or to obtain more limited relief by way of seeking a cost judgment in that case. Once such an election was made and judgment entered thereon, the [plaintiff] was barred from seeking additional damages.
Id. at 114. The conflict between the district courts originates from different readings of this Court's decision in Cate v. Oldham, 450 So.2d 224 (Fla. 1984).
In Cate, this Court held that "the common law of Florida does not allow a state official who has been sued in [his or her] official capacity to maintain an action for malicious prosecution." Id. at 227. The Court based its holding on a historical analysis, and concluded that public officials sued in their official capacity should be barred from bringing a malicious prosecution action because of the potential chilling effect upon a citizen's right to petition the government. The Court stated:
At common law successful defendants could either tax costs and fees in the original action, or they could sue for malicious prosecution upon the basis of those losses; they could not do both. There being no Florida decision or statute to the contrary, the common law rule precludes such an attempt at double recovery here.
Id. (citation omitted). We agree with the district court below that Cate does not preclude malicious prosecution actions by private parties for damages that were not recovered nor considered by the trial court in the initial action. The problem of "double recovery" is not present in the instant case because Turkey Creek is seeking damages in excess of and different from the costs awarded to Turkey Creek in the initial action. Turkey Creek's complaint states that it is seeking compensatory and punitive damages, as well as interest and costs. In fact, the complaint is alleging over four million dollars in damages resulting from the Homeowners' intentional and malicious distribution of false information. These damages are different from the costs awarded to Turkey Creek by the trial court in the Homeowners' declaratory action. We find that Turkey Creek is not barred from a malicious prosecution action for damages that are different from those damages considered or awarded by the trial court in the initial action.
Another distinguishing factor between Cate and the instant case is the election of remedies. As the Court stated:
A government official sued only in his or her official capacity, and from whom no relief is sought which would run against his or her personal, as opposed to governmental behavior or finances, can claim no greater right to seek greater sanctions. He or she has personally suffered no loss which is not redressable through his or her application for redress in the suit in which he or she is originally sued.
Cate, 450 So.2d at 227. Unlike the plaintiff in Cate, Turkey Creek has the option of choosing whether to proceed with a malicious prosecution claim. The ruling in Cate does not prohibit private parties, like Turkey Creek and the Homeowners, from suing for malicious prosecution. Finally, we agree with the district court that requiring a party to choose an election of remedies will not protect the right to petition the government because the malicious prosecution *18 action is still available to the party who does not seek costs in the first action. Thus, we hold that a private party may bring a malicious prosecution claim against another private party for damages not considered or recovered in the original action.
The second issue is whether the district court correctly reversed the trial court's dismissal of the complaint for failure to state a cause of action for tortious interference with contractual rights, tortious interference with an advantageous business relationship, and civil conspiracy. The Homeowners and the State argue that the district court erred by not finding that the Homeowners' conduct was protected under the First Amendment right to petition the government. Both the Homeowners and the State contend that Turkey Creek filed the lawsuit to punish the Homeowners for exercising their First Amendment right to petition the government. They urge this Court to adopt the "sham" test set out in Sierra Club v. Butz, 349 F. Supp. 934 (N.D.Cal. 1972). In Sierra Club, the federal court stated that:
liability can be imposed for activities ostensibly consisting of petitioning the government for redress of grievances only if the petitioning is a "sham", and the real purpose is not to obtain governmental action, but to otherwise injure the plaintiff.
Id. at 939. The Homeowners and the State contend that because malice is easy to allege the "sham" test would allow the First Amendment breathing room to protect the rights of citizens petitioning the government.
The Homeowners argue that the district court erred in finding that the dispute is between two private parties and the First Amendment did not apply. Further, the Homeowners contend that they petitioned Turkey Creek as a quasi-governmental entity and thus are entitled to First Amendment protection. The State argues that the district court erred in not finding that Homeowners' comments to county zoning officials were privileged under the First Amendment. The State concludes that under the "sham" test Turkey Creek's suit is an intimidation suit and thus should be dismissed.
We decline to adopt the "sham" test because we find that the current law in Florida already provides protection for the First Amendment right to petition the government. In Nodar v. Galbreath, 462 So.2d 803 (Fla. 1984), this Court addressed the issue of whether a parent who makes statements concerning a teacher's qualifications at a school board meeting could be held liable for defamation. The Court first determined that the teacher was a private person and not a public official; thus the law required the plaintiff to show express malice as opposed to actual malice. The Court then stated the rule of law that:
"One who publishes defamatory matter concerning another is not liable for the publication if (a) the matter is published upon an occasion that makes it conditionally privileged and (b) the privilege is not abused."
Nodar, 462 So.2d at 809 (quoting Restatement (Second) of Torts § 593 (1976)). Thus, in Nodar the Court found that the parent's remarks were privileged as a matter of law on the ground of "statements of a citizen to a political authority." Id. at 810. The Court then examined the record to determine if the parent's remarks abused the speaker's conditional privilege. After examining the parent's remarks, the Court concluded that the parent had not abused his privilege of speaking to the school board and thus the evidence was insufficient to show express malice. Id. at 811. We find that the test used in Nodar protects the Homeowners' First Amendment rights and adequately guards against the danger of intimidation suits. Thus, we decline to adopt the "sham" test as set out by the federal court.
In the instant case, the complaint alleges that the Homeowners intentionally and maliciously made numerous false statements to third parties and the local government officials for the purpose of harming Turkey Creek's economic interests. Accepting the allegations as true and in the light most favorable to Turkey Creek, we find that the complaint makes a facially *19 sufficient claim that the Homeowners abused their privilege.[4] Thus, the district court correctly ruled that the trial court erred in dismissing Turkey Creek's claims for tortious interference with contractual rights, tortious interference with an advantageous business relationship, and civil conspiracy.
The third issue for review is whether the district court correctly held that Turkey Creek's claim for slander of title was not a compulsory counterclaim to the Homeowners' declaratory action and thus was not barred. Florida Rule of Civil Procedure 1.170(a) (1987) states in part:
A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, provided it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.
A compulsory counterclaim is "a defendant's cause of action arising out of the transaction or occurrence that formed the subject matter of the plaintiff's claim." Yost v. American Nat. Bank, 570 So.2d 350, 352 (Fla. 1st DCA 1990) (citing City of Mascotte v. Florida Mun. Liab. Self Insurers Program, 444 So.2d 965, 966 (Fla. 5th DCA 1983), review denied, 451 So.2d 847 (Fla. 1984)). Failure to raise a compulsory counterclaim in the first suit will result in a waiver of that claim. Yost, 570 So.2d at 352.
The purpose of the compulsory counterclaim is to promote judicial efficiency by requiring defendants to raise claims arising from the same "transaction or occurrence" as the plaintiff's claim. As the district court noted, the courts have defined "transaction or occurrence" with a "broad realistic interpretation" in order to avoid numerous lawsuits from the same facts. Turkey Creek, 567 So.2d at 945 (quoting Stone v. Pembroke Lakes Trailer Park, Inc., 268 So.2d 400, 402 (Fla. 4th DCA 1972)). The Fifth District Court of Appeal adopted the following four-part test to determine whether a defendant had a compulsory counterclaim:
(1) Are the issues of fact and law raised by the claim and counterclaim largely the same?
(2) Would res judicata bar the subsequent suit on defendant's claim absent the compulsory counterclaim rule?
(3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?
(4) Is there any logical relation between the claim and the counterclaim?
Mascotte, 444 So.2d at 967 (adopting test set out in Roberts v. National School of Radio & Television Broadcasting, 374 F. Supp. 1266, 1270 (N.D.Ga. 1974), overruled on other grounds by Mims v. Dixie Finance Corp., 426 F. Supp. 627 (N.D.Ga. 1976)). An affirmative answer to any of the foregoing questions would mean that the claim is compulsory. Mascotte, 444 So.2d at 967.
The Third District Court of Appeal considered the compulsory counterclaim test used in Mascotte and determined that the court should focus on whether a logical relationship existed between the claim and the counterclaim. In Neil v. South Florida Auto Painters, Inc., 397 So.2d 1160 (Fla.3d DCA 1981), the district court noted:
Obviously, if the relationship between the claim and counterclaim satisfies any of these tests, it necessarily satisfies the logical relationship test.... It is when ... the issues of fact and law are not largely the same, when collateral estoppel or res judicata do not apply, and when the evidence to support the plaintiff's claim and the defendant's counterclaim is not the same that only the logical relationship test can be used.
*20 Id. at 1164 n. 7 (citations omitted). Consequently, the "logical relationship test" is the yardstick for measuring whether a claim is compulsory. The Neil court in following the "logical relationship test" adopted the federal test that:
[A] claim has a logical relationship to the original claim if it arises out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant.
Id. 397 So.2d at 1164 (quoting Revere Copper and Brass, Inc. v. Aetna Casualty and Surety Co., 426 F.2d 709, 715 (5th Cir.1970)). Like the district court in Neil and the instant case, we adopt this test in determining whether a claim is compulsory. However, we also note that stating this test is far easier than determining if a claim passes the logical relationship test.
The Homeowners' initial lawsuit centered around Turkey Creek's management of the PUD, and the residents' dissatisfaction with the covenants and restrictions in operating the PUD. Specifically, the Homeowners challenged Turkey Creek's amendment of the homeowners association's bylaws and declarations. In contrast, Turkey Creek's action against the Homeowners for slander of title is based on the allegations that the Homeowners intentionally and maliciously spread false information about Turkey Creek and the PUD. Turkey Creek's complaint alleges that the Homeowners posted large signs and billboards with false and defamatory information, and spread false information to local real estate attorneys, zoning officials and OIDC. These two lawsuits are separate controversies with distinct and unrelated facts; thus we find that Turkey Creek's slander of title action was not a compulsory counterclaim.
Accordingly, for the reasons stated we approve the decision below. In addition, we disapprove of the Cypher decision to the extent that it is inconsistent with our opinion today.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES and KOGAN, JJ., concur.
NOTES
[1] The trial court awarded Turkey Creek a final judgment for costs on March 13, 1985, for $5,611.50 in the initial lawsuit brought by the Homeowners.
[2] As the district court noted, the trial court dismissed with prejudice the claims for slander of title and malicious prosecution in a November 1987 order. The trial court also dismissed the remaining counts with leave to amend in the November 1987 order. Turkey Creek appealed that order which the district court dismissed as an unauthorized appeal from a non-final order. The trial court subsequently dismissed Turkey Creek's Second Amended Complaint with prejudice. The Second Amended Complaint had reasserted the remaining counts. Like the district court, we review both of these orders of dismissal in this review.
[3] The Homeowners addressed the failure to state a cause of action in each count of the complaint separately. We have combined the issues concerning a failure to state a cause of action into the second issue.
[4] We note that the Homeowners' argument that Turkey Creek is a quasi-government authority is premature. In reviewing a motion to dismiss, our review is limited to accepting the allegations of complaint as true. Cutler v. Board of Regents, 459 So.2d 413, 414 (Fla. 1st DCA 1984). The allegations of the complaint state that Turkey Creek is a private land development corporation. Thus, we do not consider any defenses that have been or will be raised.