728 So.2d 744 (1999)
Gonzalo AGUILAR, M.D., et al., Appellants,
v.
SOUTHEAST BANK, N.A., etc., et al., Appellees.
No. 91,164
Supreme Court of Florida.
March 18, 1999.
William G. Cooper and Morgan L. Gaynor of Toole, Beale & Cooper, P.A., Jacksonville, Florida, and George E. Ridge of Ridge & Lantinberg, P.A. for Appellants.
Timothy H. Crutchfield of Haley, Sinagra & Perez, P.A., Miami, Florida, and Barry Richard, Tallahassee, Florida and Hilarie Bass, Miami, Florida of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., for Appellees.
PER CURIAM.
We have for review the following question certified to this Court by the United States Court of Appeals for the Eleventh Circuit in Aguilar v. Southeast Bank, 117 F.3d 1368 (11th Cir.1997):
WHETHER A DEFENDANT WHO IS NOT AN OBLIGOR ON THE ORIGINAL NOTE AND MORTGAGE IN AN IN REM FORECLOSURE ACTION IS REQUIRED TO BRING, AS A COMPULSORY COUNTERCLAIM, TORT CLAIMS ARISING OUT OF THE SAME OPERATIVE FACTS AS THOSE OF THE FORECLOSURE ACTION.
Id. at 1371. We have jurisdiction. Art. V, § 3(b)(6), Fla. Const. We rephrase the certified question as follows:
WHETHER UNDER LONDONO v. TURKEY CREEK, INC., 609 So.2d 14 (Fla.1992), A DEFENDANT WHO IS NOT AN OBLIGOR ON THE ORIGINAL NOTE AND MORTGAGE IN AN IN REM FORECLOSURE ACTION IS REQUIRED TO BRING, AS A COMPULSORY COUNTERCLAIM, ALL TORT CLAIMS ARISING OUT OF THE FORECLOSURE ACTION.
We answer the rephrased question in the negative.
The relevant facts are set forth in the opinion of the United States Court of Appeals:
The appellants, who are all doctors ("appellants" or "doctors"), had an agreement to purchase condominiums in a medical office complex called "St. Jude Medical Center," which was being developed by a partnership known as the GIPP Partnership. The project was financed by First Federal Savings and Loan Association of Jacksonville.1
In 1987, the Bank initiated foreclosure proceedings against the St. Jude project. *745 The GIPP Partnership, as the developer of the project, was named as a defendant. The appellants, and others, were also named as defendants in the foreclosure action based solely on the fact that they had an interest in St. Jude, in that their purchase agreements would have given them a part ownership interest in the first floor ambulatory surgical center, physical therapy center, radiology center and other attendant services. The ownership by each of the appellants in the first floor facility was to be represented by shares of stock of a corporation or units of a limited partnership which would own and operate the first floor facility. The doctors were not obligors on the note or mortgage of St. Jude.... In sum, the doctors had no direct relationship with the Bank. Their only interest in the foreclosure lawsuit was that their ownership of condominiums under construction would have entitled them to part ownership in the first floor of St. Jude.
The GIPP Partnership filed a counterclaim against the Bank in the foreclosure, claiming that the Bank had breached an agreement to modify the construction loan agreement to extend the construction loan. In its counterclaim, GIPP contended that it had been unable to complete the sale of the condominium offices or to begin operation of the ambulatory surgical center because of the Bank's breach of the loan extension agreement.
The Bank and GIPP eventually reached a settlement which provided for the entry of an agreed foreclosure judgment against St. Jude. After the foreclosure, the doctors filed suit against the Bank in state court, alleging tortious interference with a contractual relationship, based on the damages they suffered when the Bank allegedly breached the loan extension agreement between the Bank and GIPP. The alleged loan extension agreement had been the subject of GIPP's counterclaim against the Bank in the foreclosure action.
The state court, relying on Turkey Creek, Inc. v. Londono, 567 So.2d 943 (Fla. 1st DCA 1990), granted the Bank's Motion for Summary Judgment on the ground that the claim for tortious interference should have been raised as a compulsory counterclaim in the foreclosure action. The court based its decision on the fact the doctors were parties to the foreclosure action....
While the appeal of the summary judgment was pending, the Bank was declared insolvent and the Federal Deposit Insurance Corporation ("FDIC") became the receiver. The FDIC immediately removed the case to federal court. The doctors moved the federal district court to modify or vacate the judgment and requested a de novo review of the summary judgment entered by the state court.
The district judge agreed with the state court's conclusion that the tortious interference claims were logically related to the issues raised in the foreclosure action and that the doctors should have raised the tort claims in the foreclosure action. The federal district court had the benefit of the Florida Supreme Court's affirmance of the Londono case, on which the state court had relied. Londono v. Turkey Creek, Inc., 609 So.2d 14 (Fla.1992). In Londono, the Supreme Court of Florida notes that the purpose of the compulsory counterclaim rule is to promote judicial efficiency and to avoid multiple lawsuits from the same facts.
1Southeast Bank, N.A. acquired First Federal after the foreclosure action was filed. Southeast became the successor in interest of First Federal. Southeast Bank and First Federal are interchangeably referred to as "the Bank."
Aguilar, 117 F.3d at 1369-70. The Court of Appeals concluded the that the doctors' claims were compulsory counterclaims and certified the above question.
The doctors maintain that their tort claims are not compulsory counterclaims. We agree. This Court, in Londono v. Turkey Creek, Inc., 609 So.2d 14 (Fla.1992), adopted the "logical relationship test" to aid in the determination of whether a counterclaim is compulsory under Florida Rule of Civil Procedure 1.170.[1] We explained in Londono: *746 A compulsory counterclaim is "a defendant's cause of action arising out of the transaction or occurrence that formed the subject matter of the plaintiff's claim." Failure to raise a compulsory counterclaim in the first suit will result in a waiver of that claim.
The purpose of the compulsory counterclaim is to promote judicial efficiency by requiring defendants to raise claims arising from the same "transaction or occurrence" as the plaintiffs claim. As the district court noted, the courts have defined "transaction or occurrence" with a "broad realistic interpretation" in order to avoid numerous lawsuits from the same facts....
. . . .
... [T]he "logical relationship test" is the yardstick for measuring whether a claim is compulsory....
[A] claim has a logical relationship to the original claim if it arises out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant.
Londono, 609 So.2d at 19-20 (citations omitted) (emphasis added and deleted).
Applying the Londono standard to the present case we must determine whether the tort claims raised by the doctors arise from the same operative facts as the bank's complaint in the original lawsuit. The bank's complaint sought to foreclose the mortgage on the St. Jude property and was based on the mortgage and security agreement that existed between the bank and GIPP.[2] The doctors' present claim, on the other hand, asserts that the bank interfered with the doctors' business relationship with GIPP and is based on a loan extension agreement between the bank and GIPP.[3] We note that the loan extension agreement is an unrecorded instrument signed two years after the mortgage agreement and was not mentioned in or attached to the bank's foreclosure complaint.
On these facts, we disagree with the Court of Appeals' conclusion that the doctors' claims satisfy the requirements set forth in Londono. See Londono, 609 So.2d at 19-20. The two lawsuits involve distinct facts and legal issues. The loan extension agreement was mentioned in the original lawsuit only in the context of a counterclaim asserted in GIPP's answer to the bank's foreclosure complaint. This counterclaim was dated May 27, 1988, or almost three months after most of the doctors filed their answers or had defaulted in the suit. Our review of the record supports the doctors' contention that at the time they filed their answers or defaulted, they had no information on which to assert a compulsory counterclaim. We conclude that the doctors' present claim does not meet the logical relationship test articulated in Londono and is not a compulsory counterclaim required to be filed in the foreclosure suit. We answer the rephrased certified question in the negative and return this case to the United States Court of Appeals for the Eleventh Circuit.
It is so ordered.
*747 HARDING, C.J., SHAW, WELLS, ANSTEAD and PARIENTE, JJ., and OVERTON, Senior Justice, concur.
NOTES
[1] Florida Rule of Civil Procedure 1.170(a) states in part:

(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, provided it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.
[2] The bank also claimed that the doctors' deposit purchase and sale agreements were subordinate to the bank's mortgage and security agreement. The bank's amended complaint alleged the same paragraph for each doctor:

31. Defendant, GONZALO AGUILAR, M.D., may have or claim to have some right, title or interest in the Property described in the Mortgage which is attached as Exhibit "A" under that Deposit Receipt and Purchase and Sale Agreement, a copy of which is attached as exhibit "X", which is undated. Any right, title or interest whatsoever claimed by said defendant in the Property is inferior, subordinate and subject to the lien of the Mortgage.
(Emphasis added.)
[3] The doctors alleged that the bank knew of the business relationships between GIPP and the individual doctors and subsequently interfered with those business relationships by repudiating the loan extension agreement, not providing further funding to GIPP, and foreclosing the construction project.