Plaintiffs' request that the Court certify a class under rule 23 of the Federal Rules of Civil Procedure.

**OPINION CORP., et. al., Plaintiffs,**

v.

**ROCA LABS, INC., Defendant.**

**Case No. 8:15–CV–00811–EAK–AEP**

United States District Court,
M.D. Florida,
Tampa Division.

Signed August 10, 2015

Marc John Randazza, Randazza Legal Group, Las Vegas, NV, for Plaintiffs.

Paul Howard Berger, Hurricane Law Group, Boca Raton, FL, James Roscoe Tan-ner, Askalaw, LLC, Tampa, FL, for Defendant.

## ORDER

ELIZABETH A. KOVACHEVICH, United States District Judge

This matter comes before the Court pursuant to Defendant's, ROCA LABS, INC. ("Roca"), Motion to Dismiss, (Doc. # 28), filed April 17, 2015, Plaintiffs', OPINION CORPORATION ("Opinion") and CONSUMER OPINION CORPORATION ("Consumer"), Response in Opposition, (Doc. # 29), filed April 30, 2015, and Roca's Reply, (Doc. # 38), filed May 18, 2015. For the reasons set forth, Defendant's Motion is **GRANTED.**

## BACKGROUND

■ On August 12, 2014, Plaintiffs sued Roca in the United States District Court for the Southern District of New York in a declaratory judgment action requesting declaration that Opinion was not infringing on Roca's trademark and copyrights, and that Opinion was immune under Section 230 of the Communications Decency Act[1]. (Doc. # 38 at 1). On August 15, 2014, Roca filed an action against Opinion in the 12th Judicial Circuit, in Sarasota County, Florida seeking damages for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")[2], tortious interference with a business contract, tortious interference with a prospective economic relationship, defamation via pissedconsumer.com, defamation via Twitter, and declaratory relief. (Doc. # 38). The 12th Circuit Court case was removed to this Court on August 26, 2014, and docketed

---

1. Section 230 of the Community Decency Act ("DCA") immunizes internet service providers from liability for content originated by others. 47 U.S.C. § 230(c)(1). This immunity preempts state law that otherwise provides for liability. 47 U.S.C. § 230(e)(3); *Dowbenko v. Google Inc.*, 991 F.Supp.2d 1219, 1220 (S.D.Fla.2013) aff'd, 582 Fed.Appx. 801 (11th Cir.2014); *Doe v. Am. Online, Inc.*, 783 So.2d 1010, 1018 (Fla.2001) (holding that Section 230 preempts Florida law).

2. Roca cited the foregoing sections of FDUTPA: section 501.204(1)(it is unlawful for any party to engage in unfair or deceptive acts or practices in the conduct of any trade or commerce); section 501.211(1)("anyone aggrieved by a violation" of the FDUTPA may bring a claim under FDUTPA to enjoin a party that has violated, is violating, or is likely to violate FDUTPA); section 501.211(2)(any action brought by an aggrieved party, wherein such party has suffered a loss as a result of violation of FDUTPA, such party may recover actual damages, plus attorneys' fees and court costs).

as *Roca Labs, Inc. v. Consumer Opinion Corp., et. al,* Case No. 8:14–cv–02096–VMC–EAJ ("case 02096"). (Doc. # 38). On September 11, 2014, Opinion filed its Answer and Affirmative Defenses to Roca's Complaint. (Doc. # 38). On October 29, 2014, Roca transmitted a DMCA takedown notice[3] to Opinion threatening to file a copyright infringement suit in response to posts on the pissedconsumer.com website, describing Roca as a highly litigious party. (Doc. # 1 at 2). On January 13, 2015, Roca emailed Opinion demanding an immediate retraction of the alleged defamatory statements.[4] (Doc. 7–1).

On January 14, 2015, Opinion brought the instant action in the United States District Court, Southern District of Florida, seeking damages for misrepresentation of copyright claims under the Digital Millennium Copyright Act ("DMCA"), and a declaratory judgment that Opinion or Consumer had not defamed Roca. (Doc. # 1 at 2). On January 30, 2015, the United States District Court in the Southern District of New York entered an order transferring the New York declaratory judgment action to this Court docketed as *Opinion Corp. v. Roca Labs, Inc.,* Case No. 8:15–cv–00263–SCB–TBM. (Doc. # 38 at 2). On March 9, 2015, Opinion voluntarily dismissed the case transferred from the Southern District of New York. (Doc. # 38 at 2).

On April 2, 2015, the United States District Court for the Southern District of Florida granted Roca's motion to transfer the instant case to the United States District Court, Middle District of Florida. *Id.* On March 20, 2015, Roca filed its First Amended Complaint in Case 02096, and on April 15, 2015, Opinion filed their Answer to the Amended Complaint.

In the instant case Plaintiffs' claims are as follows. Count I alleges that Roca knew or was "willfully blind to the material falsity of its representations with respect to copyright infringement" under the DMCA, 17 U.S.C. § 512, and "as a direct and proximate result of [Roca]'s actions, Plaintiffs have been injured in an amount to be determined at trial."[5] (Doc. 1). Count II alleges further misrepresentation by Roca under the DMCA where Roca sent a DMCA shutdown notice of Opinion's website because Opinion's use of the words "Roca Labs" was an infringement. *Id.* Plaintiffs also assert in Count II that Roca either knew or was willfully blind to the material falsity of its representations in the DMCA notice of the violation of their rights under Title 17.[6] *Id.* Count III alleges that Roca "willful[ly] and wonton[ly] ... used the DMCA process, including a false sworn statement, to accomplish a purpose for which the DMCA notice and takedown procedure

---

3. Section 512(c), dealing with the creation of extrajudicial "takedown" notices with the Internet Service Provider (ISP), requiring that notices be accompanied by "[a] statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law." 17 U.S.C. § 512(c)(3)(A)(v).

4. Under Florida law, a demand for retraction of allegedly libelous material is a prerequisite to an action for defamation. *Ortega Trujillo v. Banco Central Del Ecuador,* 17 F.Supp.2d 1334 (S.D.Fla.1998). In the email, Roca accused Plaintiffs of making the following statement about Roca Labs: "Specifically, statistics shown on the website include that there have been 52 complaints, $110k in claimed losses, $2.1k average loss, and 0 resolved"; "Roca Labs, through its chief attorney, Paul Berger, believes it can silence you through fear and intimidation directed at Pissed Consumer"; and "Roca Labs first sued us.") (Doc. 7–1).

5. Plaintiffs conclude in their first six counts that as "a direct and proximate result of Defendant's actions, Plaintiffs have been injured in an amount to be determined at trial[ ]"; and that "[p]laintiffs have been forced to retain the services of an attorney to pursue this action, and they are entitled to recover their attorney's fees and any and all costs associated with pursuing this matter. In the alternative, Plaintiffs ask for attorney fees as damages due to the bad faith action of Defendant in these matters."

6. Plaintiffs maintain that the DMCA shutdown notice was used improperly for the reason that Roca's violation of its rights stems from Plaintiffs' use of Roca Labs' name which is not protected by under copyright law, but does not cite his assertion. (Doc. 1)

was not designed." [7] *Id.*

In Count IV Plaintiffs seek a declaratory judgment to corroborate its assertions that use of the words "Roca Labs" in roca-labs.pissedconsumer.com and use of a "Roca Labs" thumbnail image is fair use, or in the alternative, that it does not constitute infringement of a copyright lawfully owned or administered by Defendant. Id. More so, Plaintiffs seek a declaration from this Court that "Consumer Opinion Corp. does not own, operate, or otherwise have control over pissedconsumer.com, and therefore, took no actions that could be deemed lawful or unlawful." *Id.* In Count V Plaintiffs seek a declaration that they have not defamed Roca with the complained-of statements Opinion made on its website about Defendant [8] and also seek "a judicial determination of their rights and duties." *Id.* In Count VI Plaintiffs set out that Consumer owns the trademark "Pissed Consumer" and licenses this trademark to Opinion for use in conjunction with Opinion Corp.'s website pissedconsumer.com. *Id.* Plaintiffs elaborate that "Consumer Opinion Corp. does not own, operate, or maintain control over the website pissedconsumer.com." *Id.* Moreover, Roca knew that Consumer does not engage in website operations and that Roca cannot prove by clear and convincing evidence that Consumer made any of the statements with actual malice, as Consumer made no statements of or concerning Roca. *Id.*[9] In Count VII Plaintiffs seek a declaration that Roca is the alter ego of Roca Labs Nutraceuticals ("RLN"), that the corporate veil protecting either of them as against the liabilities, claims or finances of the other should be pierced and that both are jointly and severally liable for Plaintiffs' claims. Id

In the 02096 case, Roca accuses Plaintiffs—the Defendants in 02096 case—of numerous violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUT-PA"), tortious interference with contractual relationships, tortious interference with prospective economic relationships, defamation, and declaratory relief, all related to the ownership and operation of the website at issue in this litigation. These allegations were amended but filed March 20, 2015. Plaintiffs—again the Defendants in 02096 case—answered those allegations April 15, 2015. In their Answer, Plaintiffs denied substantially the allegations in the Amended Complaint and alleged eight affirmative defenses, including, *inter alia,* immunity under Communications Decency Act, truth, qualified privilege, contractual defenses, first-to-file rule, and failure to state a claim.

## DISCUSSION

Under Federal Rule of Civil Procedure 8(a)(2), a Plaintiff's complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim on which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "While a complaint attacked by a [Rule] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide grounds of his [or her] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S.Ct. 1955 (second alteration in original) (citation omitted) (internal quotation marks omitted).

---

7. Plaintiffs allege that the "false and perjurious DMCA notice" was used by the Defendant to: "suppress criticism," "not to address any copyright concerns," and "to extract an advantage in another proceeding ..." (Doc. 1).

8. "[Roca Labs] ... is a public figure, [the statements Opinion made] were true, substantially true, or statements of opinion, none of the state-

ments referenced in Defendant's Notice pursuant to Fla. Stat. § 770.01 give rise to a cause of action of defamation." (Doc. 1)

9. The Court notes that, as far as Count VI is concerned, Plaintiffs have not requested any sort of relief as they have in their previous counts.

On a Rule 12(b)(6) motion to dismiss, a court must "accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257, 1261 (11th Cir.2012). Courts follow a two-prong approach when considering a motion to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir.2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). If "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," then the claim meets the "plausibility requirement," but it requires "more than a sheer possibility" that the allegations are true. *Id.* "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned [...] accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

In the present case, Roca does not argue the insufficiency of Plaintiffs' complaint, but rather the complaint should be dismissed because it is compulsory in nature.

**The Compulsory Nature of Plaintiffs' Counterclaim**

 A pleading shall state as a counterclaim any claim which at that time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties [over] whom the court cannot acquire jurisdiction. Fed.R.Civ.P. 13(a). A compulsory counterclaim is a defendant's cause of action "arising out of the transaction or occurrence that formed the subject matter of the plaintiff's claim." *Yost v. American*

*Nat'l Bank*, 570 So.2d 350, 352 (Fla.Dist.Ct. App.1990) (citing *City of Mascotte v. Florida Mun. Liab. Self Insurers Program*, 444 So.2d 965, 966 (Fla.Dist.Ct.App.1983), *rev. denied*, 451 So.2d 847 (Fla.1984)). Florida courts encourage a "broad, realistic interpretation" of the compulsory counterclaim rule allowing the foreclosure of possibly duplicative litigation. *Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d 1378, 1381 (11th Cir.1991). If the court determines as a matter of law that a counterclaim is compulsory in nature, a party's failure to raise the counterclaim in earlier litigation constitutes a waiver of the claim. *Yost*, 570 So.2d at 352; *see also Republic Health v. Lifemark Hosps. of Fla.*, 755 F.2d 1453, 1454 (11th Cir.1985) (holding that the determination of whether a counterclaim is compulsory is made as a matter of law). The Eleventh Circuit and Florida District Courts, in determining whether counterclaims are compulsory, have adopted the following four-factor test:

(1) Are the issues of fact and law raised by the claim and counterclaim largely the same?

(2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counter claim rule?

(3) Will substantially the same evidence support or refute plaintiffs claim as well as defendant's counterclaim?

(4) Is there any logical relation between the claim and counterclaim?

*Beepot v. J.P. Morgan Chase Nat'l Corporate Servs.*, 57 F.Supp.3d 1358, 1370 (M.D.Fla. 2014); *Montgomery Ward*, 932 F.2d at 1381; *Republic Health Corp.*, 755 F.2d at 1455. An affirmative answer to any of the foregoing questions would mean that the counterclaim is compulsory. *Montgomery Ward*, 932 F.2d at 1381.

**i. The Logical Relationship Between the Claims**

 The Eleventh Circuit employs the "logical relationship" test to determine whether a counterclaim arises out of the

same transaction or occurrence as the cause of action that underlies a case. *Richardson v. Trainer*, 2003 WL 25762441, at *4 (S.D.Fla.2003); *Olufemi v. Your Care Clinics, LLC*, 2006 WL 269982, at *2 (M.D.Fla. 2006). Under Florida law, the " 'logical relationship test' is the yardstick for measuring whether a claim is compulsory." *Beepot*, 57 F.Supp.3d at 1370–71; *Londono v. Turkey Creek, Inc.*, 609 So.2d 14, 20 (Fla.1992). Florida applies the same "logical relationship" test as applied in the Eleventh Circuit such that:

> "[a] claim has a logical relationship to the original claim if it arises out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant."

*Montgomery Ward*, 932 F.2d at 1381 (quoting *Neil v. S. Fla. Auto Painters, Inc.*, 397 So.2d 1160, 1164 (Fla.3d Dist.Ct.App.1981)); *see also Londono*, 609 So.2d at 20. "The aggregate operative facts that can act as a common basis for both claims have been broadly construed in Florida." *Juster*, 932 F.2d at 1381. Indeed, the rule is "designed to foreclose the possibility of duplicative litigation, so Florida courts encourage a 'broad, realistic interpretation' of the rule that allows the rule to accomplish its goal." *Puff 'N Stuff of Winter Park, Inc. v. Fed. Trust Bank, F.S.B.*, 945 F.Supp. 1523, 1530 (M.D.Fla.1996).

Roca has brought against Opinion and Consumer a cause of action under FDUTPA, claims of tortious interference with Roca's contractual relationships and prospective economic relationships, and two defamation claims, one premised on statements authored by third-party individuals, and the other for republication of those third-party reviews on Twitter. Plaintiffs, in this case, have brought an action of misrepresentation of copyright claims under the DMCA, abuse of process against Roca, seek declaratory relief that Opinion's use of the roca-labs.pissedconsumer.com subdomain does not infringe on Roca's copyright, and the statements made by Opinion describing Roca's litigation practice is not defamatory.

While the parties seek remedy from different laws, there are strong topical similarities between the parties' causes of action. The parties each raise the general issue of defamation on pissedconsumer.com; they each speak to the attributes of what was allegedly stated on pissedconsumer.com; and whether roca-labs.pissedconsumer.com constitutes infringement of a copyright lawfully owned or administered by Roca. The issues of defamation and copyright infringement lying at the heart of Roca's Amended Complaint in case 02096 are largely the same as Plaintiffs' Complaint in the current case. Because the instant claim revolves around the website pissedconsumer.com and whether the content posted rise to the level of defamation, it "arises out of the same aggregate of operative facts" making it compulsory in nature. *Beepot*, 57 F.Supp.3d at 1371 (M.D.Fla.2014); *Montgomery Ward*, 932 F.2d at 1381 (citing *Roberts v. Nat'l Sch. of Radio & Television Broad.*, 374 F.Supp. 1266, 1270 (N.D.Ga. 1974)). Employing the "broad, realistic interpretation," it is clear the issues raised in this case should have been raised in the 02096 case, especially after amendment. *Montgomery Ward*, 932 F.2d at 1381. Accordingly, it is

**ORDERED** that Plaintiffs' Complaint is **DISMISSED** with **PREJUDICE**. The Clerk of Court is directed to close this case and terminate any pending motions.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this *10th* day of August, 2015.

### ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION

This cause came before the Court pursuant to the *Plaintiffs' Motion to Alter or Amend Judgment Under Fed.R.Civ.P. 59(e)* (Doc. No. 52) (the **"Motion for Reconsideration"**)

filed by the Plaintiffs, Opinion Corp. and Consumer Opinion Corp. (the **"Plaintiffs"** or the **"Opinion Parties"**) on September 8, 2015, and the *Defendant's Roca Labs, Inc. Response to Plaintiff's (sic) Motion to Alter or Amend Judgment* (Doc. No. 55) (the **"Response"**) filed by the Defendant, Roca Labs, Inc. (the **"Defendant"** or **"Roca"**). For the reasons set forth below, the Motion for Reconsideration is **GRANTED.**

## I. Background

On August 15, 2014, Roca filed a complaint against the Opinion Parties in Florida state court. On August 26, 2014, the case was removed to the United States District Court for the Middle District of Florida, and assigned Case No. 8:14–cv–2096–VMC–EAJ (the **"2096 Case"**). (2096 Case Doc. No. 1).[1] Through the 2096 Case, Roca asserted claims against the Opinion Parties for (i) violations of the Florida Deceptive and Unfair Trade Practices Act (**"FDUTPA"**), (ii) interference with Roca's contractual relationships, and (iii) defamation. (2096 Case Doc. No. 2). On September 11, 2014, the Opinion Parties filed and served their answer in the 2096 Case. (2096 Case Doc. No. 9) (the **"Answer"**).

According to the Opinion Parties, on October 29, 2014 Roca transmitted a "takedown" request to the Opinion Parties under the Digital Millennium Copyright Act (the **"DMCA"**). (Doc. No. 1, at 2). The "takedown" request alleged acts of copyright infringement by the Opinion Parties. (Doc. No. 1, at 6). Thereafter, on January 13, 2015, Roca allegedly sent the Opinion Parties a correspondence under Section 770.01 of the Florida Statutes, through which it threatened to sue the Opinion Parties for defamation. (Doc. No. 1, at 3). The following day, on January 14, 2015, the Opinion Parties commenced this action, seeking (i) damages for alleged violations of the DMCA and abuse of process related to Roca's transmittal of the

"takedown" notice, (ii) declaratory relief regarding whether the Opinion Parties had infringed Roca's copyrights, (iii) declaratory relief regarding whether the statements identified by Roca in its January 13, 2015 correspondence were defamatory, and (iv) a determination that Roca was an alter ego of another entity, Roca Labs Nutraceuticals USA, Inc. (**"RLN USA"**) (collectively, the **"811 Claims"**). (Doc. No. 1).

Shortly thereafter, on January 19, 2015, Roca filed a motion in the 2096 Case to amend its complaint to address and incorporate some of the events that gave rise to the 811 Claims. (2096 Case Doc. No. 79). Judge Covington permitted Roca to amend its complaint, which it filed on March 20, 2014. (2096 Case Doc. No. 114) (the **"Amended Complaint"**). On April 15, 2015, the Opinion Parties filed their answer and affirmative defenses to the Amended Complaint. (2096 Case Doc. No. 117) (the **"Amended Answer"**). However, the Opinion Parties did not assert any counterclaims mirroring the 811 Claims in the Amended Answer.

Two days later, on April 17, 2015, Roca filed a motion to dismiss the 811 Claims for failure to state a claim (Doc. No. 28) (the **"Motion to Dismiss"**). On August 10, 2015, the Court entered an *Order* (Doc. No. 43) (the **"Dismissal Order"**) dismissing the 811 Claims with prejudice. Through the Dismissal Order, the Court determined that the 811 Claims should have been asserted as compulsory counterclaims in the 2096 Case; particularly in the Amended Answer. Fourteen days later, on August 24, 2015, the Plaintiffs filed a *Notice of Appeal* (Doc. No. 45) (the **"Notice of Appeal"**) of the Dismissal Order to the Eleventh Circuit Court of Appeals. Thereafter, on September 8, 2015,[2] the Plaintiffs filed the Motion for Reconsideration, seeking reconsideration of the Dismissal Order. The Defendant filed its Response on September 23, 2015.

---

**1.** All references to documents filed in the 2096 Case shall be in the following format: (2096 Case Doc. No. ——).

**2.** The Motion for Reconsideration was filed 29 days after entry of the Dismissal Order. However, since Monday, September 7, 2015 was Labor Day, the Motion for Reconsideration was timely under Federal Rule of Civil Procedure 6(a)(1)(C).

## II. Legal Analysis

### A. The Court has jurisdiction to consider the Motion for Reconsideration.

Before considering the merits of the Motion for Reconsideration, the Court must address a threshold jurisdictional issue. First, "[a]s a general rule, the filing of a timely notice of appeal divests a district court of jurisdiction over the action." *Guadagni v. New York Transit Auth.*, 2009 WL 750224, at *2 n. 3 (E.D.N.Y. March 19, 2009). As a result, some courts have concluded that a district court lacks jurisdiction to consider a motion for reconsideration filed *after* a notice of appeal of the same order or judgment. *See, e.g., Adkins v. Jeffreys*, 327 Fed.Appx. 537, 539 (6th Cir.2009). However, other courts have held that under Federal Rule of Appellate Procedure 4(a)(4), the filing of a motion for reconsideration suspends the effectiveness of an earlier-filed notice of appeal until after the district court has ruled on the post-trial motion. *See, e.g., Stewart Park & Reserve Coal., Inc. v. Slater*, 374 F.Supp.2d 243, 252 (N.D.N.Y.2005) (where a notice of appeal is "filed *prior* to ... the filing of a Rule 59(e) [m]otion ... application of Appellate Rule 4 effectively renders the appeal to the Court of Appeals in abeyance pending the district court's determination of the post-judgment motion.").

The Eleventh Circuit has not squarely addressed this issue, but binding Fifth Circuit authority states that a district court has authority to consider and deny a Rule 60(b) motion filed *after* a notice of appeal. *Wilson v. Thompson*, 638 F.2d 801, 803 (5th Cir. 1981). More recently, a court in this circuit held that the effect of filing a Rule 59 motion *after* the filing of a notice of appeal "is (1) to stay the notice of appeal until the motion is resolved and (2) to revive the court's jurisdiction." *McNair v. Campbell*, 315 F.Supp.2d 1179, 1181 (M.D.Ala.2004). The *McNair* court's interpretation is supported by the 1993 Advisory Committee Notes to Federal Rule of Appellate Procedure 4, which state that "[a] notice filed *before the filing of one of the specified motions* or after the filing of a motion but before disposition of the motion is, in effect, suspended until the motion is disposed of, whereupon, the previously filed notice effectively places jurisdiction in the court of appeals." *Slater*, 374 F.Supp.2d at 252 (quoting *Fed. R.App. P.* 4, Advisory Committee Notes 1993 Amendments) (emphasis added).

Applying *Slater, Wilson*, and *McNair* to the facts of this case, the filing of the Motion for Reconsideration suspended the effectiveness of the Notice of Appeal. Therefore, the Court believes that it has jurisdiction to consider the merits of the Motion for Reconsideration.

### B. The Court has discretion to grant or deny a Motion for Reconsideration.

Federal Rule of Civil Procedure 59(e) gives the Court "broad discretion to reconsider an order which it has entered." *Offices Togolais Des Phosphates v. Mulberry Phosphates, Inc.*, 62 F.Supp.2d 1316, 1331 (M.D.Fla.1999). "There are three grounds that justify granting a motion to alter or amend judgment: 1) an intervening change in controlling law; 2) the availability of new evidence; or 3) the need to correct clear error or prevent manifest injustice. *Id.* "A motion to alter or amend a judgment must demonstrate why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Wendy's Int'l, Inc. v. Nu–Cape Constr., Inc.*, 169 F.R.D. 680, 684 (M.D.Fla.1996). While a Rule 59(e) motion is "not a vehicle for rehashing arguments already rejected by the court or for refuting the court's prior decision," such a motion is appropriate "when the court has patently misunderstood a party and has made a decision outside the adversarial issues presented, or has made a mistake, not of reasoning, but of apprehension." *Id.* at 686. Ultimately, "[t]he decision of whether to grant or deny a Rule 59(e) motion is discretionary." *Id.*

Here, the Opinion Parties contend that the Court committed a clear error of law by

dismissing the 811 Claims with prejudice. In particular, they argue that the events that gave rise to the 811 Claims occurred after the Opinion Parties filed their Answer in the 2096 Case and, as a result, that the 811 Claims could not have been compulsory counterclaims in the 2096 Case. For the reasons set forth below, the Court agrees that it was improper to dismiss the 811 Claims with prejudice.

### C. The 811 Claims were not compulsory counterclaims w hen the Opinion Parties filed their Answer.

 Federal Rule of Civil Procedure 13(a)(1) states that "[a] pleading must state as a counterclaim any claim that—*at the time of its service*—the pleader has against an opposing party ..." *Fed. R. Civ. P.* 13(a)(1) (emphasis added). Pursuant to Federal Rule of Civil Procedure 7(a)(2), "an answer to a complaint" is a pleading. *Fed.R.Civ.P.* 7(a)(2). Therefore, at the time of the service of the Answer in the 2096 Case, the Opinion Parties were required to state any compulsory counterclaim they had against Roca. Here, the 811 Claims are largely derived from conduct that occurred subsequent to the filing of the Answer in the 2096 Case. For example, Counts I-III are based on the "takedown" notice that Roca transmitted to the Opinion Parties in October of 2014, and Count V is based on the allegations of defamation made in the January 13, 2015 correspondence. Along the same lines, Count IV, wherein the Opinion Parties seek a declaration regarding Roca's accusations of copyright infringement, and Count VII, wherein the Opinion Parties seek a determination that Roca is an alter ego of RLN USA, were not raised in the 2096 Case. As a result, the 811 Claims were not compulsory counterclaims when the Opinion Parties filed their Answer in the 2096 Case.

### D. Even if the 811 Claims became compulsory counterclaims based on the filing of the Amended Complaint in the 2096 Case, the 811 Claims fall within the "another pending action" exception set forth in Rule 13(a)(2)(A).

 Federal Rule of Civil Procedure 13(a)(2)(A) states that "[t]he pleader need

not state the claim if when the action was commenced, the claim was the subject of another pending action." *Fed.R.Civ.P.* 13(a)(2)(A). In *Union Paving Co. v. Downer Corp.*, which is cited in the Advisory Committee Notes to Rule 13, the Ninth Circuit Court of Appeals stated "[t]he purpose of this exception is seemingly to prevent one party from compelling another to try his cause of action in a court not of the latter's choosing when the same cause of action is already the subject of pending litigation in another forum, one which was probably chosen by the owner of the cause of action concerned." 276 F.2d 468, 470 (9th Cir.1960). Stated simply, "[t]he exception enables a party to escape the waiver rule if he has already begun his action in another forum of his own choosing." *Id.*

 In the Dismissal Order, the Court did not consider the impact of Rule 13(a)(2)(A) because, when the 2096 Case was commenced in August of 2014, the 811 Claims were not technically the subject of "another pending action." Rather, the 811 Claims did not become the subject of "another pending action" until approximately five months later, when the Opinion Parties commenced this case. However, upon closer review, the decision not to apply Rule 13(a)(2)(A) was based an overly technical and narrow reading of Rule 13(a)(2)(A). This is because even if the filing of the Amended Complaint converted the 811 Claims into compulsory counterclaims, the earliest the Opinion Parties would have been required to assert the 811 Claims as counterclaims would have been when they filed the Amended Answer. By that point in time, the 811 Claims had been the subject of "another pending action" for approximately four months. As a result, requiring the Opinion Parties to bring the 811 Claims in the 2096 Case have violated the policy of Rule 13(a)(2)(A), which is "to prevent one party from compelling another to try his cause of action in a court not of the latter's choosing when the same cause of action is already the subject of pending litigation in another forum." *Union Paving*, 276 F.2d at 470. With these considerations in mind, the Court believes that it misappre-

674

673

hended the applicability of Rule 13(a)(2)(A) in relation to Roca's filing of the Amended Complaint. Therefore, the 811 Claims should not have been dismissed for failure to comply with Rule 13(a)(1).

## III. Conclusion

Accordingly, it is

**ORDERED** that the Motion for Reconsideration is **GRANTED.** The Clerk of Court is directed to **VACATE** the Dismissal Order, and to **STAY** this case pending resolution of the appeal. Within fourteen (14) days after the resolution of the appeal, the parties shall file a joint statement regarding the status of this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 25th day of January, 2016.

